624 A.2d 1083

The PHOENIXVILLE AREA SCHOOL DISTRICT,

v.

THE PHOENIXVILLE AREA EDUCATION ASSOCIATION, Joyce Devaney, President and The Pennsylvania State Education Association and Donald J. Nicholas, Sr. and The American Arbitration Association,

Appeal of The PHOENIXVILLE AREA EDUCATION ASSOCIATION, The Pennsylvania State Education Association and Donald J. Nicholas, Sr., Appellants.

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided March 30, 1993.

Reargument Denied June 10, 1993.

Leonard V. Tenaglia, for appellants.

Charles N. Sweet, for appellee.

Before DOYLE and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

This is an appeal from an order of the Court of Common Pleas of Chester County enjoining the Phoenixville Area Education Association with its parent the Pennsylvania State Education Association and Donald J. Nicholas, the grievant school teacher, (collectively, Association) along with nominal defendant American Arbitration Association (AAA), from continuing to pursue arbitration on the subject of Nicholas' dismissal from his teaching position with the Phoenixville Area School District (District). We reverse.[1]

The District, which discharged Nicholas for cause,[2] initiated the dismissal process by a motion approved at the April 19,

---

1. This matter was argued before a panel consisting of Judge Doyle, Judge Friedman and Senior Judge Lederer. Because of the conclusion of Senior Judge Lederer's service, the case was submitted on briefs to Senior Judge Kelton for his consideration as a member of the panel.

2. The cause was stated as being "immorality," as set forth in the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101—27-2702, 24 P.S. § 11-1122. The immorality charge arose from Nicholas' actions during a strike. We noted the underlying facts in *Phoenixville Area School District v. Unemployment Compensation Board of Review*, 141 Pa.Commonwealth Ct. 555, 557, 596 A.2d 889, 890–91 (1991), *appeal denied*, 529 Pa. 671, 605 A.2d 335 (1992):

> Claimant worked for District as a secondary school math teacher for approximately eight years. In November, 1989, Claimant served as chief negotiator for the teachers' union in the course of a thirty-four-day strike, during which, District employed per diem substitutes to staff its facilities. While the strike continued, Claimant followed a female substitute to her home, a drive in excess of one hour, and the two had a verbal encounter on the street corner.

1990 regular monthly public meeting of the Board of School Directors (School Board). Nicholas received notice of the School Board's action along with a statement of charges. Following a pretermination hearing on April 24, Nicholas was suspended without pay pending a termination hearing. On May 1, the Association notified the District that Nicholas waived the right to a hearing before the School Board and instead elected the right to file a grievance on the matter. On May 8, the District responded indicating its position that the collective bargaining agreement did not permit a professional employee to elect a grievance proceeding to challenge dismissal and notifying Nicholas of a hearing on May 16, 1990. Formal public hearings conducted May 16 and May 24, 1990 culminated in a resolution of the School Board on May 25, 1990, terminating Nicholas. (R.R. at 38a.)

As Nicholas' representative, the Association attended the May 16 hearing for the limited purpose of objecting and stating on the record that Nicholas would not testify, would not be present, and would not otherwise participate because he elected to be heard through the grievance process rather than before the School Board. The School Board hearings proceeded without participation by Nicholas or his representatives. On May 25, 1990, having heard the videotaped deposition testimony of the complaining witness and in-person testimony of three other witnesses, and absent any defense or mitigation by Nicholas, the School Board terminated Nicholas' employment.

The Association conducted a parallel grievance process, claiming that the suspension and discharge were in retaliation for Nicholas' activities as chief negotiator for the Association. At each step in the grievance process, the District denied that

The township police, after receiving a complaint and statement from the substitute, charged Claimant with criminal harassment, to which Claimant pleaded not guilty. Claimant's father died the day of the hearing, so Claimant elected to pay the fine ($100.50) to have the matter quickly settled. Of his own accord, the district justice ordered a continuance of several weeks, but Claimant again failed to appear and was summarily convicted. Claimant paid the remaining court costs and did not appeal the conviction. Subsequently, District terminated Claimant's employment.

it was subject to the grievance procedure. When the grievance was finally submitted to arbitration,[3] the District petitioned the Court of Common Pleas of Chester County seeking to stay the arbitration. The trial court granted the District's request, barring the Association and the AAA from further attempts to arbitrate the matter.[4]

The crux of the Association's argument is that the trial court erred in staying arbitration because provisions of the Collective Bargaining Agreement (the Agreement) are grievable unless a provision specifically provides that it is not subject to the grievance procedures. The Association further contends that even if discharge would normally be excluded, it is grievable in this instance because the District's action discriminated against Nicholas due to his union activity, in violation of Article 5 of the Agreement.[5] In addition, the Association points out that, pursuant to Section 1133 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702, Nicholas was entitled to elect either the statutory or the contractual grievance procedure and argues that once he made this election, arbitration of the dispute is mandatory under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

On the other hand, the District argues that Article 8 (Management Functions), section 8.2, of the Collective Bargaining Agreement clearly and unambiguously reserves teacher dismissal issues for the School Board and that the Uniform

3. Step 4 of the grievance process provides for submission of a grievance to arbitration when it has not been satisfactorily resolved. (R.R. at 70a–71a.)

4. The action by Nicholas for unemployment compensation paralleled this one. The initial denial of unemployment compensation benefits was confirmed by the Referee under section 402(e), willful misconduct. On appeal, the Unemployment Compensation Board of Review reversed the Referee's decision and awarded compensation. The award was affirmed by Commonwealth Court by order of August 5, 1991. *Phoenixville Area School District v. Unemployment Compensation Board of Review.*

5. Article 5 provides in pertinent part: "The Board agrees that no person shall be discriminated against because of ... membership in the Association or participating in its activities or acting on its behalf."

Arbitration Act, 42 Pa.C.S. § 7301–7361, permits the trial court to stay arbitration when it determines that the issue is not within the scope of the arbitration agreement.

The trial court found that Nicholas was discharged for immorality and that "the clear language of the Agreement did not intend discharge to be among the grievable issues. Rather, the Agreement provided that discharge for cause was a management function exclusively vested in the Board." (Trial Court Op. at 3.)

■ Our review of a trial court decision is generally limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law has been committed or whether the trial judge abused his or her discretion. *Northampton School District v. Skepton*, 138 Pa.Commonwealth Ct. 574, 588 A.2d 1020 (1991) *appeal denied*, 529 Pa. 637, 600 A.2d 956 (1991). Because a trial court should not enjoin arbitration unless it can be said with certainty that the agreement does not cover the dispute, *Lincoln System of Educ. v. Lincoln Ass'n of Univ. Professors*, 467 Pa. 112, 354 A.2d 576 (1976), the trial court errs as a matter of law if it grants a stay of arbitration in a situation where it cannot be said with positive assurance that the agreement is not susceptible to an interpretation which covers the dispute.[6] *Sanitary Sewer Authority v. Dial Associates*, 367 Pa.Superior Ct. 207, 532 A.2d 862 (1987). Thus, if we determine that this dispute is one which comes within the grievance/arbitration

6. In light of our public policy favoring arbitration, *See, e.g., Midland Education Association v. Midland Borough School District*, 116 Pa.Commonwealth Ct. 191, 193–94, 541 A.2d 428, 429 (1988), and the serious consequences of the grant of a stay of arbitration under section 7304(b) of the Uniform Arbitration Act, the trial court decision must be closely scrutinized to determine whether a clear right to the stay of arbitration has been established. If the trial court, in the case *sub judice*, had denied the stay, the parties would have proceeded to arbitration. However, granting the stay puts Nicholas out of court and leaves him without a remedy because after his election of the grievance process the Board hearings proceeded without him and resulted in his dismissal. Thus, while an order denying the stay is interlocutory and generally not subject to appeal, *See, e.g., Patton v. Hanover Insurance Co.*, 417 Pa.Superior Ct. 351, 612 A.2d 517 (1992) and *In re Woodland Hills School District*, 81 Pa.Commonwealth Ct. 199, 473 A.2d 257 (1984), an order granting the stay is a final order and is appealable.

provisions of the collective bargaining agreement, we must reverse the order granting the stay of arbitration. *Id.*

We must determine whether the trial court erred in holding that the dispute over Nicholas' discharge was not arbitrable.

We look first to the Agreement. Article 29 (Grievances) provides for grievance of disputes involving interpretation or application of provisions of the Agreement unless the provisions specifically preclude grievance and also provides for arbitration of disputes "arising out of the discriminatory or arbitrary implementation of Board policy as it affects an individual in regards to his/her wages, hours and terms and conditions of employment," [7] Next we examine whether termination of employment is specifically excluded from the grievance process. Article 8 (Management Functions), section 8.2, lists "discharge for proper cause" among the management functions which are vested exclusively in the school board.[8] In arguing that the trial court erred in staying arbitration, the Association contends that Article 8 does not specifically provide that it is not subject to the grievance procedures of Article 29. An example of specific exclusion of a provision from the grievance procedure is found in Article 30 (Meet and Discuss), section 30.1, which provides that decisions on "policy matters affecting wages, hours and terms and conditions of employment . . . are not grievable under Article 29 of this

---

7.  Section 29.1 of the collective bargaining agreement provides:
    For the purpose of this Agreement, the term "Grievance" means any dispute between the Board and any employee(s) concerning the interpretation or application of any provisions of this Agreement unless specifically provided that said provision is not subject to this Article, or arising out of the discriminatory or arbitrary implementation of Board policy as it affects an individual in regards to his/her wages, hours and terms and conditions of employment.

8.  Section 8.2 of the collective bargaining agreement provides:
    The qualifications, capabilities and grading of applicants for employment shall be determined solely by the Board. The right to promote, suspend or discharge for proper cause, transfer, change work assignments, specify minimum professional performances and the right to relieve employees from duty because of lack of work are management functions vested exclusively in the Board (subject to the limitations and procedures now provided by law).

Agreement." [9]   Section 30.1's clear exclusion of disputes arising under that provision from the grievance process is not found in section 8.2.   Thus, it is not clear whether vesting management functions exclusively in the Board was intended to preclude grievance of disputes arising under Article 8. Furthermore, many of the Article 8 management functions appear to be encompassed by the term "wages, hours, terms and conditions of employment," raising the issue of whether Nicholas' termination is grievable as a dispute "arising out of the discriminatory or arbitrary implementation of Board policy as it affects an individual in regards to his/her wages, hours and terms and conditions of employment," pursuant to section 29.1.

The Agreement must be read in conjunction with the pertinent statutes and decisional law.   Section 1133 of the Public School Code permits an employee to choose the statutory hearing process over the grievance procedure, but also provides that once the election is made:

> any provision of the collective bargaining agreement relative to the right of the exclusive representative to grieve or arbitrate the termination of such professional employe shall be void.  *Professional employes shall have the right to file a grievance under the collective bargaining agreement **or** request a hearing pursuant to section 1121 through 1132, **but not both.***

(Emphasis added.)

Despite the fact that the School Code provides a right of election, it does not grant an absolute and automatic right to grieve/arbitrate the matter of termination for cause.   It merely guarantees that the statutory provisions covering termination of a professional employee will not preempt a collective bargaining agreement and that the provisions of a collective

**9.**   Section 30.1 of the collective bargaining agreement provides:
The Board agrees upon request to meet at reasonable times and discuss recommendations submitted by the Association on policy matters affecting wages, hours and terms and conditions of employment, provided however, that any decisions or determinations on such matters shall be solely that of the Board whose decisions or determinations are not grievable under Article 29 of this Agreement.

bargaining agreement will not override the statute. The election cannot be made if the collective bargaining agreement does not apply to terminations.

■ If Nicholas' dispute is grievable, he had the right to elect between the statutory and contractual procedures. However, the critical question remains: who decides whether Nicholas' discharge is a grievable dispute?

Section 7304(b) of the Uniform Arbitration Act provides that a court may stay arbitration "on a showing that there is no agreement to arbitrate," whereas section 903 of the Public Employe Relations Act provides: "Arbitration of disputes or grievances arising out of the *interpretation* of the provisions of a collective bargaining agreement is mandatory." (Emphasis added.) [10] Read together these statutes confirm that if there is no agreement to arbitrate and an employee attempts to pursue an inapplicable grievance procedure,[11] a stay of arbitration, pursuant to the Uniform Arbitration Act, is appropriate. If, however, the agreement does not clearly permit or preclude grievance of the dispute, the provisions of the agreement must be interpreted to determine whether there is an agreement to arbitrate. In that case, a stay is not appropri-

**10.** Section 7304(b) of the Uniform Arbitration Act provides:
(b) Stay of arbitration.—On application of a party to a court to stay an arbitration proceeding threatened or commenced the court may stay an arbitration on a showing that there is no agreement to arbitrate. When in substantial and bona fide dispute, such an issue shall be forthwith and summarily tried and determined and a stay of the arbitration proceedings shall be ordered if the court finds for the moving party. If the court finds for the opposing party, the court shall order the parties to proceed with arbitration.

**11.** This case illustrates a gap in protection for the employee. The School Code seeks to preserve the employee's right to choose between the statutory procedure and a contractual grievance procedure contained in a collective bargaining agreement. However, by requiring the employee to elect one procedure or the other, the legislature has created a situation where the employee may be left without the opportunity to be heard if the employee elects arbitration and the school board hearing, proceeding without the employee, results in dismissal and the Board, having refused to participate in the grievance process, is later successful in staying arbitration. The employee is presented with a Hobson's choice.

ate, and an arbitrator must determine whether the dispute is grievable.

Pennsylvania case law supports this conclusion. *See In re Glover,* 137 Pa.Commonwealth Ct. 429, 587 A.2d 25 (1991), *appeal denied,* 528 Pa. 633, 598 A.2d 286 (1991) (a trial court may grant a stay, pursuant to section 7304(b) of the Uniform Arbitration Act, if the matter is not subject to the grievance process under the collective bargaining agreement; the threshold question is "whether an agreement to arbitrate the disputed issue existed in the first instance." *Id.* 137 Pa.Commonwealth Ct. at 434, 587 A.2d at 27); *Sanitary Sewer Authority v. Dial Associates,* 367 Pa.Superior Ct. 207, 211, 532 A.2d 862, 864 (1987) (a trial court should not enjoin arbitration unless "it can be said with positive assurance that the agreement involved is not susceptible of an interpretation that covers the asserted dispute") and *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982) citing to *Pittsburgh Joint Collective Bargaining Committee v. Pittsburgh,* 481 Pa. 66, 75, 391 A.2d 1318, 1323 (1978) and *Board of Education v. Philadelphia Federation of Teachers,* 464 Pa. 92, 103 n. 13, 346 A.2d 35, 41 n. 13 (1975) (if an issue is not clearly excluded [12] from arbitration, "[w]e have consistently held that '[t]he question of the *scope* of the grievance arbitration procedure is for the arbitrator, at least in the first instance'" (emphasis in original)).[13]

---

**12.** If there is an agreement to arbitrate, the intention of the parties determines whether a specific issue is within the scope of the arbitration agreement. In *East Pennsboro Area School District v. Pennsylvania Labor Relations Board,* 78 Pa.Commonwealth Ct. 301, 467 A.2d 1356 (1983) we stated:

> The best evidence that the parties intended not to arbitrate concerning a class or classes of disputes or grievances is an express provision in the collective bargaining agreement excluding certain questions from the arbitration process.... The instant Agreement must therefore be reviewed to determine if the parties intended to arbitrate this grievance.

*Id.* 78 Pa.Commonwealth Ct. at 305, 467 A.2d at 1358.

**13.** Footnote 13 in *Board of Education* states:

> There is no need for us to consider what is the proper construction of the agreement—whether one of those here suggested or some other. That is a question for the arbitrator, at least in the first

Where, as here, the arbitrability of the dispute depends upon interpretation of provisions of the collective bargaining agreement, both the Agreement and section 903 of the Public Employe Relations Act mandate that the determination of arbitrability be made by an arbitrator. Because there is a question of whether or not Nicholas' dismissal is arbitrable under the agreement, the court has no power under section 7304(b) to stay the arbitration.

We do not decide whether the dispute over Nicholas' discharge is subject to the grievance procedure.[14] We decide only that the Agreement is "susceptible of an interpretation that covers the asserted dispute." *Sanitary Sewer.* Because the initial determination of arbitrability is for the arbitrator,

instance.... Consequently, the existence of *any* construction which could properly be implemented is sufficient to require denial of the injunction. (Emphasis in original.)

*Board of Education* involved a complaint in equity seeking to enjoin arbitration of a dispute. In denying the injunction, the court relied on the public policy favoring arbitration as embodied in the Public Employe Relations Act.

14. For the merits of the dispute over Nicholas' termination to proceed to arbitration, the arbitrator must decide the following issues in favor of the grievance process:

1. Are disputes concerning interpretation and application of Article 8 management functions specifically excluded from Article 29 grievances?

If no, the dispute is subject to the grievance process and is arbitrable under Step 4 of that process.

If yes, go to question 2.

2. Are the management functions listed in Article 8 encompassed within the term "wages, hours and terms and conditions of employment?"

If yes, go to question 3.

3. Does Nicholas' dispute arise out of "the discriminatory or arbitrary implementation of Board policy as it affects an individual in regards to his/her wages, hours and terms and conditions of employment."

If yes, the dispute is subject to the grievance process and is arbitrable under Step 4 of that process.

If the arbitrator finds that the answer to either question 2 or question 3 is no, the disputed termination is not subject to the grievance process. Otherwise, the dispute is grievable. Furthermore, even if the arbitrator determines that the termination dispute is not grievable, the issue of discrimination for union activities is still grievable as a dispute "concerning the interpretation or application of" Article 5 of the Agreement. An arbitrator could presumably fashion an appropriate remedy.

not the trial court, the trial court erred in granting a stay of arbitration.

Accordingly, the order of the Court of Common Pleas of Chester County is reversed.

## ORDER

AND NOW, this 30th day of March, 1993, the order of the Court of Common Pleas of Chester County, dated July 3, 1991, is reversed.

DOYLE, J., concurs in the result only.

KELTON, J., dissents.