**Panther Valley School District v. Panther Valley Education Association**

*Robert T. Yurchak,* for plaintiff.
*Charles T. Herring* and *Harry Everhart,* for defendant.

LAVELLE, *P.J.,* January 11, 1996—This is an appeal by Panther Valley School District pursuant to 42 Pa.C.S. §933(b) and 42 Pa.C.S. §§7302(b) and (d) from an arbitrator's award sustaining a grievance of Harry Everhart, and ordering him reinstated.

Everhart has been a school teacher employed by school district as a science teacher for 25 years. This case began with a parents' complaint against Everhart for making inappropriate sexual remarks and gestures while teaching their son's science class during the 1993-94 school year. (Attached as an addendum to this opinion are district's exhibits 6 and 7, which is a list of the alleged remarks and descriptions of the gestures.) School District Superintendent, Dr. Joseph Dispenziere, on May 24, 1994 wrote to Everhart that he was suspended pending a hearing before the school board.

By letter dated June 3, 1994, school district notified Everhart that a hearing would be held on June 14, 1994 before the Panther Valley School Board to determine whether he should be dismissed or reinstated. Pursuant to section 11-1133 of the Pennsylvania Public School Code of 1949, Everhart notified school district that he waived a hearing before the school board and that he elected to litigate this dispute by and through the grievance procedure of article XV, section 1 of the collective bargaining agreement.

A hearing was held before Arbitrator Patrick McFadden on November 11, 1994 on whether school district had just cause for the discipline and/or discharge of Everhart and if so, what that discipline should be.

At the hearing, the arbitrator heard the testimony of various witnesses which included Rayaz Chishti, the complaining student, four of his classmates from Everhart's class, Everhart, and several teachers and administrators.

On the charge of immorality/cruelty, the arbitrator did not find the testimony of Rayaz Chishti credible. Rayaz could only supply a date for one of the many accusations against Everhart and the arbitrator pointed out that none of the other witnesses corroborated Rayaz's version of what happened.

Everhart categorically denied making any of the statements and gestures of which Rayaz Chishti accused him. The arbitrator found his testimony credible. He opined that Everhart was supported by the testimony of Mary Ann DeSei, the middle school principal and Everhart's immediate supervisor, who had observed and evaluated him on numerous occasions in the classroom and never witnessed any inappropriate discussions or gestures and stated that he always followed the lesson plan in teaching science. The arbitrator found Everhart's testimony was further bolstered by the testimony of four of Rayaz Chishti's classmates in Everhart's class who stated that Everhart made some statements that were remotely similar to Rayaz's allegations; that they were not offended or embarrassed by them; and that Rayaz's version distorted what actually happened. The arbitrator concluded that the allegations against Everhart were unfounded. The arbitrator found no evidence to indicate that Everhart made any statements or gestures that were immoral in nature.

The arbitrator also concluded that the school district's evidence was insufficient to establish "cruelty" on the part of Everhart. In making this finding, he used the definition of cruelty set forth in *Caffas v. Board of*

*School Directors of the Upper Dauphin Area School District,* 23 Pa. Commw. 578, 582, 353 A.2d 898, 900 (1976) where the Commonwealth Court defined cruelty as behavior that necessarily entailed an "intentional and malicious infliction of physical or mental suffering. . . ." (Arbitrator's opinion, p. 13.)

On the charges of persistent and willful violation of the school laws and insubordination, the arbitrator found that Everhart's attempts to contact the Chishti family after he was instructed not to by Dr. Dispenziere were willful. However, the arbitrator stated, "we are unable to conclude that three phone attempts and a letter rise to a level of insubordination that would warrant dismissal of a 25 year employee with an otherwise unblemished record." (Arbitrator's opinion, p. 17.)

On May 1, 1995 the arbitrator sustained Everhart's grievance and directed school district to reinstate Everhart to his former position without loss of seniority and/or benefits. Further, the arbitrator directed school district to pay Everhart for any and all lost wages from the date of his dismissal by school district until the date of reinstatement.

## DISCUSSION

This court's review of the arbitrator's award on an appeal is narrowly circumscribed. Our standard of review is limited to determining whether the arbitrator's decision derives its essence from the collective bargaining agreement. The Pennsylvania Supreme Court has held that "an arbitration award must be upheld if it can in any rational way be derived from the collective bargaining agreement in light of the language, context, and other indicia of the parties' intention." *Pennsylvania State Education Association with Pennsylvania School Service Personnel/PSEA v. Appalachia Intermediate*

*Unit 08,* 505 Pa. 1, 5, 476 A.2d 360, 362 (1984). The court may not review the arbitrator's decision on the merits, nor may the court substitute its judgment for that of the arbitrator. See *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989).

Remedies ordered by arbitrators are to be affirmed if they further the essence of the collective bargaining agreement. *Wayne Highlands Education Association v. Wayne Highlands School District,* 92 Pa. Commw. 114, 498 A.2d 1375 (1985). Furthermore, the United States Supreme Court has held that:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair resolution of a problem. This is especially true when it comes to formulating remedies." *Id.* at 122, 498 A.2d at 1379, citing *United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 597 (1960).

We shall now address school district's contentions in the light of these principles.

## I. *Arbitrability of Issues and Scope of Authority*

School district first contends that the question of whether there was just cause for Everhart's discharge/dismissal was not arbitrable and the arbitrator acted beyond the scope of his authority by hearing and deciding this matter. This argument is wholly meritless.

The parties stipulated to the issue of arbitrability. At the very outset of the arbitration hearing, counsel put on the record that the issue before the arbitrator was "whether or not there was just cause for the discipline and/or discharge of the grievant (Everhart) and

if not, what shall the remedy be." (N.T. pp. 5-6.) The parties also agreed that the foregoing was a clear and concise statement of the issue pursuant to the collective bargaining agreement. The parties further stipulated that the arbitrator had the authority to modify the penalty if necessary. In giving a more detailed explanation of the stipulation, Everhart's attorney, Charles Herring referred to joint exhibit 2 which is a letter dated June 21, 1994 from Attorney Herring to David Addy, Esquire school district's arbitration hearing attorney, stating, "It was agreed that this matter shall be submitted to arbitration by the parties for a decision of this case on its merits/facts pursuant to the parties' collective bargaining agreement. The association and the school district shall waive the grievance steps and proceed directly to arbitration." A copy of this letter was also forwarded to Robert Yurchak, Esquire, school district's counsel. Neither attorney objected to the language of the letter.

Viewed in the light of the foregoing stipulation, there is simply no question that the arbitrator was vested with the authority by the parties to hear whether there was just cause to dismiss Everhart, decide the issue on the evidence presented, and if dismissal was not justified, fashion an appropriate remedy.

All of the cases cited by school district relative to whether the arbitrator had authority to arbitrate are inapposite.[1] The school districts in those cases contested arbitrability during the arbitration and grievance process and preserved the issue for appellate review. They did

---

1. *Phoenixville Area School District v. Phoenixville Area Education Association,* 154 Pa. Commw. 438, 624 A.2d 1083 (1993); *Mifflinburg Area Education Association v. Mifflinburg Area School District,* 118, Pa. Commw. 328, 545 A.2d 419 (1988); *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978).

not stipulate, as did the parties here, to have an arbitrator decide whether school district had just cause to dismiss Everhart.

Because school district not only failed to object to arbitration, but also stipulated to arbitrate Everhart's dismissal, arbitrability has been waived. *West Shore Education Association v. West Shore School District,* 72 Pa. Commw. 374, 456 A.2d 715 (1983).

## II. *Award Drew Its Essence From Collective Bargaining Agreement*

School district contends that the arbitrator's award did not draw its essence from the collective bargaining agreement because he did not expressly reference the collective bargaining agreement in his opinion except at the very beginning in which he referenced a later agreement[2] and based his award on an interpretation of a section of the school code set forth in 24 P.S. 11-1122. School district further supports its argument by stating that "dismissal" of an employee was not specifically mentioned in the collective bargaining agreement. We disagree with these contentions.

It is true that the arbitrator did not mention the collective bargaining agreement in his award. It is unnecessary that he do so, as long as the award draws its essence from the agreement. A review of the ar-

2. The arbitrator used the collective bargaining agreement dated September 1, 1994 to August 31, 1997. This agreement was submitted to him by the parties as joint exhibit 1. Actually, the arbitrator should have used the collective bargaining agreement dated September 1, 1989 to August 31, 1994 because the charges related to matters which occurred in the 1993-94 school year. Although the arbitrator erred, this error is not grounds for reversal or remand because the relevant section in both the old and the new agreements (article XV—Rights of Professional Employees, section 1) are identical.

bitrator's decision shows that the arbitrator derived his award from article XV, section 1 of the agreement, which provides that

"No professional employee shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage *without just cause.*" (emphasis supplied)

The instant contract, as in other collective bargaining agreements, does not define "disciplined" or "without just cause." Because the contract does not shed any light on the meaning of these terms, it is within the arbitrator's province to interpret them. In *McKeesport Area School District v. McKeesport School Service Personnel Association, PSSPA/PSEA,* 137 Pa. Commw. 28, 585 A.2d 544 (1990), the Commonwealth Court reviewed an arbitrator's award which modified the discharge of a school district employee to a 14 day suspension. The collective bargaining agreement provided "no employee shall be disciplined, reprimanded or reduced in rank or compensation without just cause" but failed to define the just cause provision. The Commonwealth Court, citing *AFSCME Council 88 v. City of Reading,* 130 Pa. Commw. 575, 568 A.2d 1352 (1990), opined that it was proper for the arbitrator to apply his own interpretation of that provision.

An arbitrator cannot decide in a vacuum whether just cause for dismissal exists or use his own ideas of what is right and wrong. The arbitrator needs some commonly acceptable standard to apply to the credible facts. Here the arbitrator opted to consider and apply the same school code standards which school district used in dismissing Everhart and the appellate court's definitions of those standards. This approach makes sense. These standards are also appropriate guidelines

for interpreting a "just cause" provision in a school employee's collective bargaining agreement.

School district's additional argument concerning the absence of the word "dismissal" is also without merit. We believe that the word *discipline* in the collective bargaining agreement embraces all forms of discipline including *dismissal or discharge.* It appears that counsel for the parties also concur in that view. Otherwise, they would not have stipulated that the arbitrator was to decide whether there was just cause for Everhart's "discipline and/or discharge." (N.T. pp. 5-6.)

### III. *Erroneous Findings of Fact*

School district also argues that the arbitrator did not believe the testimony of Rayaz Chishti and therefore his finding that school district did not establish just cause for Everhart's dismissal is erroneous. School district's argument fails for two reasons. First, school district agreed to accept the findings of the arbitrator by agreeing to arbitrate Everhart's dismissal. Secondly, the arbitrator is the exclusive fact finder and the court is not free to substitute its findings of fact for that of the arbitrator no matter what the court thinks the evidence shows or how the court views the evidence. *Scranton Federation of Teachers Local 1147 v. Scranton School District,* 498 Pa. 58, 444 A.2d 1144 (1982). Even if two conclusions can be reasonably drawn from the evidence, the conclusion of the arbitrator as a fact finder will prevail. *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 250,* 162 Pa. Commw. 633, 639 A.2d 968 (1994). School district's real argument is that it is dissatisfied with the arbitrator's choice of who was credible. The arbitrator chose to believe the testimony of Everhart and Rayaz Chishti's four classmates who denied Rayaz's description and

interpretation of Everhart's words and actions in the classroom. The arbitrator did not believe the testimony of Rayaz Chishti. The arbitrator's findings, based on whom he found credible, cannot form the basis for this court's overturning his award.

IV. *Arbitrator's Predisposition in Favor of Everhart*

Finally, school district contends that the arbitrator showed a predisposition to favor Everhart based on alleged statements that the arbitrator made to two members of the school board before the hearing. School district has attached signed affidavits to its brief to support this contention. We reject this argument as unsupported by the record.

School district had a full opportunity to present any evidence it wished to present at the arbitration hearing, including the testimony of the two board members. It failed to do so. Neither the statements nor the signed affidavits are part of the record before this court. Therefore, we cannot consider them. Pa.R.C.P. 1921; *Commonwealth v. Young,* 456 Pa. 102, 115, 317 A.2d 258, 264 (1974).

## CONCLUSION

Because the arbitrator's decision meets the essence test and because the parties bargained for the arbitrator's judgment on the issues submitted, we must uphold his findings and award.

For the foregoing reasons, we enter the following order dismissing the appeal:

## ORDER

And now, January 11, 1996, it is hereby ordered and decreed that the "petition for review and application

to vacate arbitrator's award" filed by Panther Valley School District is denied and dismissed. The arbitrator's award is hereby affirmed.

---

ADDENDUM

DISTRICT EXHIBIT 6

May 10, 1994

Following are the items that Rayaz said Mr. Everhart has been saying. There are many other things he (Mr. Everhart) has said that are related, it would be impossible to list everything.

Mr. Everhart said:

"(1) I put my arms around my girlfriend and squeezed something and got all excited. I went to the bathroom and my friend had seen what I did and told me I was really squeezing her shoulder instead.

"(2) When I was a small boy I had to read a poem aloud. That day I hadn't worn any underwear; my zipper was open and my testicles were hanging out.

"(3) The F word means (he circled his forefinger and thumb, making a hole, and with another finger pushed in and out).

"(4) I wonder what it would like [sic] to have—(Rayaz cannot remember the name of such a disease) disease, so I can go around touching women—you wouldn't get caught because you'd have a disease and you couldn't help what you were doing.

"(5) If you're not attracted to the opposite sex by now, there is something wrong with you because you should be attracted.

"(6) When I was in school, I said to my teacher, There goes a cockroach! My teacher responded, Don't say cockroach, it is a roach without the cock. So the next time I got smart and said, There goes a roach without a cock! Then the teacher came over by me and slapped me.

"(7) If Dr. Mousseline tells you girls to take your shirts off so he can check your back, I'll be there to assist him.

"(8) There is a way to get a girl to take her clothes off—have her hypnotized. Then say, You just got back from a softball game practice and you are stinking so you have to take your clothes off and jump in the bathtub.

"(9) Wouldn't that be funny if your sex organs were on top of your head, so when someone pats your head, they would be touching your private parts!

"(10) When I went to a hotel once in Hawaii, I saw naked women there. There was also a bar, I saw men holding hands. When you guys are 18, you can go there.

"(11) Mr. Everhart is usually touching girls' heads and repeats fondle—fondle.

"(12) Mr. Everhart often touches himself in the front."

## DISTRICT EXHIBIT 7

These items were given by Rayaz Chishti.

"(13) May 11, 1994 Mr. Everhart said to his class: Benjamin Franklin used to bring chicks—women back with him whenever he went on some trips. Then he asked some girl if she has ever kissed a boy with green teeth. The girl tried to ignore him out of embarrassment.

Later again he came back to her and asked, Well, did you ever kiss a boy.

"(14) Once Mr. Everhart asked one of the students to shut the door in the classroom stating, You better shut the door, if someone hears me, I will get in trouble. No I'm not offended.

"(15) On one occasion, Mr. Everhart laughed and boasted, I've never been caught. No I'm not offended.

"(16) Mr. Everhart: I think Miss DeSei is starting to like me, I got to call her honey. I like her a lot because she gives me money for computers. Yes I like to use computers in class.

"(17) Mr. Everhart: I like to see Miss DeSei in a string bikini.

"(18) Mr. Everhart: A long time ago a teacher needed CPR in our school, so one of the teachers gave it to him—but if it were Miss DeSei, I would be the first one to give her mouth to mouth.

"(19) Rayaz: Mr. Everhart showed us a movie about a guy who was a member of a computer network, who was stalking other members by writing obscene (sexual) messages to them. Then Mr. Everhart said, What if you sat down to watch the news and saw your teacher being reported as a child molester. Wouldn't that be funny?!

"(20) Rayaz: Once a boy had to use the bathroom, Mr. Everhart said, Look his [sic] holding himself.

"(21) Mr. Everhart: I like to go down to gay and nude beaches to see naked women and men holding hands. For example, Mr. Horvarth was down at a gay beach in a string bikini holding hands with another man."