CHESTER UPLAND SCHOOL DISTRICT

v.

MILDRED MCLAUGHLIN and Chester Upland Education Association, Appellants,

CHESTER UPLAND SCHOOL DISTRICT

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Appellant,

CHESTER UPLAND SCHOOL DISTRICT

v.

PENNSYLVANIA LABOR RELATIONS BOARD and Chester–Upland Education Association, Appellants,

CHESTER UPLAND SCHOOL DISTRICT, Appellant

v.

PENNSYLVANIA LABOR RELATIONS BOARD, and Chester–Upland Education Association.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1994.
Decided Feb. 24, 1995.

Leonard V. Tenaglia, for appellants Chester Upland Educ. Ass'n and Mildred McLaughlin.

James L. Crawford, for appellant/appellee Pennsylvania Labor Relations Bd.

Leo A. Hackett, for appellee/appellant Chester Upland School Dist.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and NEWMAN, JJ.

PELLEGRINI, Judge.

The Chester–Upland Education Association (Association) appeals an order of the Court of Common Pleas of Delaware County (trial court) denying in part the trial court's order dated July 16, 1993, and reversing the decision of the Pennsylvania Labor Relations Board (PLRB) except as to its finding that the School District's refusal to arbitrate or seek a stay of arbitration constituted an unfair labor practice contrary to the Public Employe Relations Act (PERA).[1] The Chester Upland–School District (School District) has filed a cross appeal from this order as well.

### I.

These appeals arise as a result of the following procedural history. On April 2, 1992, Mildred McLaughlin (McLaughlin), a special education teacher employed by the School District, was advised in writing by the School District's Superintendent, Anthony Iacono, Ed.D. (Dr. Iacono), that she was being suspended without pay as a result of hearings that were held regarding allegations that she used corporal punishment on special education students.[2] The Association filed a grievance on McLaughlin's behalf seeking to restore her status as a tenured professional employee without loss of compensation or benefits. On May 15, 1992, the Association sent a letter to Dr. Iacono to discuss the selection of a mutually acceptable arbitrator pursuant to Article III C.6 of the collective bargaining agreement (Agreement) but received no response.

On June 4, 1992, the Association contacted the Pennsylvania Department of Labor and Industry, Bureau of Mediation, to request a list of arbitrators because the parties had not selected a mutually acceptable arbitrator within the requisite time set forth in the agreement. After receiving the list of arbitrators, the Association still could not get a response from the School District. The Association then filed with the Pennsylvania Labor Relations Board (PLRB) an unfair labor practice charge, alleging that the School District had failed and/or refused to take any action regarding the selection of an arbitrator in violation of Section 903 of PERA.[3]

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

2. Specifically, the School District alleged that McLaughlin had been charged with intemperance, cruelty, persistent negligence and persistent and willful violation of school laws based on the following charges:

> (a) The illegal administration of corporal punishment to students who were legally ineligible for corporal punishment;
> (b) The administration of corporal punishment in violation of the laws and regulations of the Commonwealth of Pennsylvania applicable to student with disabilities;
> (c) The excessive use of corporal punishment causing injury to students;
> (d) On or about October 24, 1988, the use of physical force on a student such as to cause injury to the student;
> (e) On or about October 24, 1988, the use of corporal punishment by means of striking the head of a student;
> (f) Her unauthorized dismissal of her class on or about May 6, 1988, endangering the students thereof;
> (g) The use of corporal punishment and/or threats and severe emotional intimidation to a student on or about December 5, 1991;
> (h) Failure to follow the instructions and to abide by notices and warnings issued to

> McLaughlin by the building principal during the period 1987 to the present concerning maintaining supervision of her class and leaving that class unsupervised;
> (i) The continued use of negative criticism, verbal harassment, loud and boisterous yelling at students and the class despite continued warnings from the building principal.

3. 43 P.S. § 1101.903. That section provides:

> Arbitration or disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tripartite board of arbitrators as the parties may agree. Any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted:
> (1) If the parties cannot voluntarily agree upon the selection of an arbitrator, the parties shall notify the Bureau of Mediation of their inability to do so. The Bureau of Mediation shall then submit to the parties the names of seven arbitrators. Each party shall alternately strike a name until one name remains. The public employer shall strike the first name. The person remaining shall be the arbitrator.

The School District responded by filing a Stay of Arbitration with the Court of Common Pleas of Delaware County (trial court) contending that the matter was not arbitrable because the grievance provision under the Agreement did not apply to circumstances where, as in this case, the teacher had a remedy under the provisions of Section 1151 of the Public School Code of 1949.[4] Although the matter was called for a hearing in the trial court, the trial court judge recused himself and indicated that the hearing would be rescheduled before another judge. No further action was taken by the trial court and no orders were entered regarding the Stay of Arbitration.

Addressing the unfair labor charge of refusing to arbitrate and relying on Section 903 of PERA, the PLRB found that an arbitrator, at least in the first instance, is to decide whether a grievance is arbitrable. Further, it found that under PERA, any refusal to arbitrate a dispute concerning a collective bargaining agreement is, per se, an unfair labor practice. It further stated that the School District's defense that the PLRB lacked jurisdiction pursuant to Section 501(a) of the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7304(a),[5] also failed because its jurisdiction had not been preempted by the trial court.

Because the PLRB then found that the School District had violated Section 1201(a)(5) of PERA [6] by refusing to arbitrate the grievance, the School District filed a petition for review and a petition for injunction with the trial court seeking a reversal of the PLRB's order and a determination that the alleged demotion of a professional employee was not within the grievance arbitration provisions of the Agreement. It again alleged that the Agreement between the Association and the School District expressly excluded from arbitration that provision of the collective bargaining agreement having to do with discipline grievance matters where the teacher would otherwise have a remedy on the provisions of the Public School Code of 1949.

■ After a hearing, the trial court issued two orders.[7] The first order granted the

**4.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1151. That section provides:

The salary of any district superintendent, assistant district superintendent or other professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

**5.** Act of October 5, 1980, P.L. 693. That section provides that on application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

**6.** 43 P.S. § 1101.1201(a)(5). That section provides that public employers, their agents or representatives are prohibited from refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but limited to the discussing of grievances with the exclusive representative.

**7.** The trial court had previously issued an order on July 16, 1993, granting both of the School District's petitions and reversing the PLRB's decision relying on the decision of Judge Labrum in *Chester Upland School District v. Pennsylvania Labor Relations Board, et al.,* 80 Del. 218 (1993), where he held that failure to arbitrate did not constitute an unfair labor practice when the employee possessed a remedy under the provisions of the Public School Code of 1949. However, relying on this court's decision in *Chester Upland Education Association v. Pennsylvania Labor Relations Board (Chester Upland I),* 158 Pa.Commonwealth Ct. 134, 631 A.2d 723 (1993), the trial court issued a second opinion in which it cited PERA and stated that the threshold issue of arbitrability remains, at least in the first instance, with the arbitrator. Only thereafter is judicial review appropriate. The trial court noted, though, that failure to submit grievances to the arbitration procedure constituted an unfair labor practice unless the arbitration procedure had been timely stayed.

School District's Application for Stay of Arbitration. The second order vacated its July 16, 1993 order and then granted in part and denied in part the School District's petition for review by reversing the decision of the PLRB except insofar as the PLRB found that the School District's refusal to arbitrate or contemporaneously seek a stay of arbitration constituted an unfair labor practice contrary to PERA. The trial court did so in light of the School District's pending petition for injunction which it found, at least technically, to be an unfair labor practice under the authority of *Chester Upland I.*[8] The Association and the PLRB filed individual appeals and the School District filed cross-appeals with this court from both of the trial court's orders.[9]

## II.

At the core of this appeal is the effect Section 7302(b) of the UAA, 42 Pa.C.S. § 7302(b), has on Section 903 of PERA. Since the enactment of the UAA, parties on both sides of collective bargaining agreements have repeatedly raised questions as to whether PERA or the UAA controls when determining which entity, the arbitrator or the trial court, has jurisdiction, in the first instance, to determine if a matter is arbitrable. The Association and the PLRB argue that PERA is controlling because Section 903 of PERA mandates arbitration before an arbitrator, and the UAA only applies when it is consistent with any statute regulating labor and management relations. If PERA controls, then matters relating to disputes over whether an issue is arbitrable must first go before an arbitrator. If the UAA applies, then the trial court first decides to either compel or stay arbitration. In order to resolve this debate, we first must examine the history of the two Acts as well as the case law that has emerged in this area.

### A.

PERA was enacted in 1970 to provide a comprehensive legislative scheme for the resolution of employment disputes in the public sector. Its primary public policy objective was to establish a harmonious and fair working relationship for the benefit of the citizens and also for the protection of the employee. *Kapil v. Association of Pennsylvania State College and University Faculties,* 504 Pa. 92, 470 A.2d 482 (1983).

Under Sections 401 and 701 of PERA,[10] public employees were given the right to "organize, form, join or assist in employe organizations or to engage in lawful concerted activities" for the purpose of bargaining with their employers over terms of employment. Consequently, pursuant to Section 901 of PERA,[11] the collective bargaining agreement, which embodied the terms of employment, was representative of a mutual acceptance of the terms by both the employer and the employee when reduced to writing and signed by the parties. Under Section 903 of PERA, the legislature determined that arbitration of disputes or grievances arising out of the interpretation of provisions of a collective bargaining agreement was mandatory, and that the procedure to be adopted was a proper subject of bargaining with the proviso that the final step had to provide for a binding decision by an

---

8. The trial court explained in its opinion:
   This Court's March 1, 1994, Orders represent an attempt to recognize the requisite finding of an unfair labor practice, seemingly compelled by *Chester Upland I, supra* 631 A.2d at 726 ("judicial intervention ... cannot help the employer who chooses not to participate in arbitration until after an unfair labor practice is lodged"), while at the same time granting to the District that it should not be compelled to bear the burden and expense of an unwarranted grievance arbitration.
   It further noted that "the better practice would involve the employer filing its stay application preemptively."

9. Our scope of review of a trial court decision is limited to determining whether its findings are supported by substantial evidence, whether an error of law has been committed or whether there has been an abuse of discretion. *Northampton Area School District v. Skepton,* 138 Pa.Commonwealth Ct. 574, 588 A.2d 1020 (1991), *petition for allowance of appeal denied,* 529 Pa. 637, 600 A.2d 956 (1991).

10. 43 P.S. § 1101.401 and § 1101.701.

11. 43 P.S. § 1101.901.

arbitrator or a tripartite board of arbitrators as the parties may agree.[12]

In *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 67–68, 451 A.2d 671, 674 (1982), the Supreme Court held that Section 903 of PERA required matters relative to collective bargaining agreements to first go to an arbitrator rather than the courts, stating:

> [T]oday's decision only returns the issue to the forum where it should have been decided at the outset; it obviously leaves open the possibility of additional review. However, were we to decide otherwise we would only encourage potential parties to such disputes to continue to follow the practice of preliminary litigating through one forum the power of another to decide the substantive issue. We condemn that practice and hold that hereafter issues involving conflicts between a public sector collective bargaining agreement and fundamental statutory policies of this Commonwealth must be presented first to arbitration for determination, subject to appropriate court review of any award in conflict with such policies.

*See also East Pennsboro Area School District v. Pennsylvania Labor Relations Board,* 78 Pa.Commonwealth Ct. 301, 467 A.2d 1356 (1983); *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462 A.2d 629 (1983); *Appeal of Woodland Hills School District,* 81 Pa.Commonwealth Ct. 199, 473 A.2d 257 (1984); *Alliston v. City of Allentown,* 71 Pa.Commonwealth Ct. 321, 455 A.2d 239 (1983).[13]

### B.

■ The Uniform Arbitration Act was first adopted in Pennsylvania in 1927 by the Act of April 25, 1927, P.L. 381. That Act provided for the arbitration of contract-related matters by an arbitrator. In 1980, Pennsylvania repealed the 1927 Act by adopting and modifying in part the model Uniform Arbitration Act of 1955 (Model Act)[14] to create the current UAA. The purpose of the UAA was to promote the resolution of disputes in a nonjudicial forum while still providing for the court's role in compelling or staying arbitration proceedings when requested.

Under both the Model Act and the UAA, the trial court could compel arbitration if an agreement existed in which the parties agreed that any grievances would be subject to arbitration, and there was an indication that one of the parties was refusing to submit to arbitration. Section 501(a) of the UAA, 42 Pa.C.S. § 7304(a). To stay arbitration, it had to prove that there was no agreement to

**12.** *See Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978); *Rylke v. Portage Area School District,* 473 Pa. 481, 375 A.2d 692 (1977); *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976); *Milberry v. Board of Education of the School District of Philadelphia,* 467 Pa. 79, 354 A.2d 559 (1976); *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3,* 464 Pa. 92, 346 A.2d 35 (1975); *Koch v. Bellefonte Area School District,* 36 Pa.Commonwealth Ct. 438, 388 A.2d 1114 (1978); *School District of Penn Hills v. Penn Hills Education Association,* 34 Pa.Commonwealth Ct. 507, 383 A.2d 1301 (1978).

**13.** By comparison, Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), gives the district courts jurisdiction to resolve disputes relating to collective bargaining agreements, including disputes as to whether a matter is subject to mandatory arbitration and to enjoin arbitration if not subject to arbitration. *See also AT & T Technologies v. Communications Workers,*

475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Company,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. American Manufacturing Company,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), which rely on 29 U.S.C. § 185(a) to determine that controversies in the private sector relating to collective bargaining agreements are for the courts to determine.

**14.** The Model Act was the result of the National Conference of Commissioners on Uniform State Laws drafting a model arbitration act, the purpose being to validate arbitration agreements, make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance was necessary.

arbitrate. Section 501(a) of the UAA, 42 Pa.C.S. § 7304(b). Section 501(a) of the UAA, 42 Pa.C.S. § 7302(b), also specifies:

This subchapter shall apply to a collective bargaining agreement to arbitrate controversies between employers and employees or their respective representatives *only where the arbitration pursuant to this subchapter is consistent with any statute regulating labor and management relations.* (Emphasis added.)

Only if Section 7304(a) is consistent with PERA would the trial court have jurisdiction under the UAA.

### C.

We first addressed the impact of the UAA on the arbitrability of a dispute in a collective bargaining agreement in *Mifflin County School District v. Lutz,* 122 Pa.Commonwealth Ct. 112, 551 A.2d 396 (1988), *petition for allowance of appeal denied,* 523 Pa. 638, 565 A.2d 446 (1989). In that case, a teacher questioned whether her dismissal, based on her unsatisfactory ratings, was subject to arbitration before an arbitrator. Without ever referring to PERA, we held that because the collective bargaining agreement expressly prohibited arbitration to settle a dispute related to teacher ratings, the trial court had jurisdiction pursuant to Section 501(a) of the UAA, 42 Pa.C.S. § 7304(b), to issue an order staying arbitration proceedings.

We first directly addressed the effect of the UAA on Section 903 in *Middle Bucks Area Vocational Technical School Education Association v. Executive Council of the Middle Bucks Area Vocational Technical School,* 122 Pa.Commonwealth Ct. 595, 552 A.2d 763, *petition for allowance of appeal denied,* 522 Pa. 606, 562 A.2d 828 (1989). Reasoning that PERA was silent as to whether the arbitrator was to determine whether a dispute was even arbitrable, and the UAA expressly permitted the trial court to stay an arbitration when there was no agreement to arbitrate a matter, we held that it was not inconsistent to allow the parties to petition the trial court for a preliminary determination as to the arbitrability of an issue. *See also In re Glover,* 137 Pa.Commonwealth Ct. 429, 587

A.2d 25, *petition for allowance of appeal denied,* 528 Pa. 633, 598 A.2d 286 (1991).

More recently, in *Phoenixville Area School District v. The Phoenixville Area Education Association,* 154 Pa.Commonwealth Ct. 438, 624 A.2d 1083 (1993), we held that it was appropriate for the trial court to decide under the UAA whether a matter was arbitrable only when the collective bargaining agreement was clear on whether arbitration was permitted. Relying on both the language in Section 7304(b) of the UAA providing that the trial court may stay arbitration on a showing that there is no agreement to arbitration, and Section 903 of PERA stating that arbitration of disputes or grievances arising out of the *interpretation* of the provisions of a collective bargaining agreement is mandatory, we stated:

Read together these statutes confirm that if there is no agreement to arbitrate and an employee attempts to pursue an inapplicable grievance procedure, a stay of arbitration, pursuant to the Uniform Arbitration Act, is appropriate. If, however, the agreement does not clearly permit or preclude grievance of the dispute, the provisions of the agreement must be interpreted to determine whether there is an agreement to arbitrate. In that case, a stay is not appropriate, and an arbitrator must determine whether the dispute is grievable.

*Id.,* 154 Pa.Commonwealth Ct. at 445–446, 624 A.2d at 1087.

The most recent decision in this area of law adding further explanation to that existing on who, in the first instance, has the power to determine whether a matter is arbitrable, is *Chester Upland I.* Summarizing the law in this area, we stated:

First, the scope of matters to be resolved by grievance arbitration is in the first instance for the arbitrator to determine. *Bald Eagle.* An employer may, however, file a petition for a stay of arbitration proceedings under 42 Pa.C.S. § 7304(b) if the employer can show a substantial, bona fide dispute as to arbitrability. *Middle Bucks.* If, on consideration of that stay petition, it can be said with certainty that the collective bargaining agreement does

not address the dispute which would be arbitrated, the common pleas court may grant a stay. *Central Bucks School District v. Central Bucks Education Association.* (Citation omitted.) A trial court should not, however, enjoin arbitration unless "it can be said with positive assurance" that the parties have agreed the dispute is not subject to arbitration. *Phoenixville Area School District v. The Phoenixville Area Education Association.* (Citation omitted.)

Second, after arbitration, a party may, on appeal to the common pleas court, raise the question of arbitrability as a threshold matter if the question has been raised before the arbitrator. *See, e.g., Harbor Creek.*[15] If it is established before the common pleas court that the dispute is not subject to arbitration, then that court may vacate the arbitration award. *Garnet Valley.*[16]

Finally, where no stay is sought and an employer does not process a grievance or otherwise participate in arbitration, the question before the PLRB is whether the refusal to arbitrate is an unfair labor practice, and jurisdiction to determine this question is first in the PLRB "and nowhere else." *Hollinger.* A party cannot unilaterally refuse to proceed to arbitration, since section 1201(a)(5) of the PERA makes it an unfair labor practice to refuse to arbitrate grievances in good faith. *East Pennsboro.*

*Id.,* 158 Pa.Commonwealth Ct. at 142–143, 631 A.2d at 727.

Essentially, the result of the evolution in the case law since *Mifflin County School District* in 1988 has been to create a situation where the trial court can enjoin arbitration. If no injunction has been issued, the arbitrator can proceed to address the arbitrability of the issue, and if either party refuses to proceed to arbitration, an unfair labor charge can be filed with the PLRB.

15. *Harbor Creek School District v. Harbor Creek Education Association,* 146 Pa.Commonwealth Ct. 631, 606 A.2d 666 (1992).

16. *Garnet Valley Service Personnel Association v. Garnet Valley School District,* 128 Pa.Commonwealth Ct. 182, 563 A.2d 207 (1989), was a

### III.

■ The Association and the PLRB have asked us to revisit this area of law and determine whether an arbitrator can be preemptively enjoined by the trial court under Section 7302(b) of the UAA. They argue, based on our Supreme Court's holding in *Bald Eagle,* that Section 903 of PERA provides that whether an issue is arbitrable in the first instance is for the arbitrator to decide and the UAA does not apply, at least in this area, because it is inconsistent with that provision.

■ Section 501(a) of the UAA, 42 Pa.C.S. § 7302(b), provides:

This subchapter shall apply to a collective bargaining agreement to arbitrate controversies between employers and employees or their respective representatives *only where the arbitration pursuant to this subchapter is consistent with any statute regulating labor and management relations.*

The question then is whether this provision is inconsistent with Section 903 of PERA mandating arbitration of disputes. Section 903 of PERA provides:

*Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory.* The procedure to be adopted is a proper subject of bargaining with the proviso that *the final step shall provide for a binding decision by an arbitrator* or a tripartite board of arbitrators as the parties may agree. (Emphasis added.)

Whether something is "consistent" is determined by if it supplements without changing the statutory scheme. In this context, it means we can rely on the provisions of the UAA to supplement PERA as long as there is nothing in the UAA that prevents us from doing that.

different scenario than the cases we have been discussing. In that case, the parties agreed to take the matter to arbitration. Only after the arbitrator determined that the matter was arbitrable and the grievance was upheld was the trial court asked to vacate the arbitration award.

Here, Section 903 of PERA, as found by our Supreme Court in *Bald Eagle*, requires that all disputes arising out of the collective bargaining agreement, including disputes as to whether issues are arbitrable under the Agreement, are to be arbitrated before an arbitrator. Because Section 903 of PERA provides that the arbitrator is to hear, at least in the first instance, all disputes including the arbitrability of disputes, to hold that a trial court also has jurisdiction would violate Section 501 of the UAA, 42 Pa.C.S. § 7302(b). To allow the trial court to enjoin such an action would not be a supplement to PERA's provision and consistent, but a new inconsistent scheme. Section 903 of PERA requires an arbitrator to hear these disputes and after an arbitrator has decided, the trial court then has jurisdiction to make an independent judgment as to whether the matter is arbitrable.

We hold that Section 903 of PERA is not silent as to whether the arbitrator has jurisdiction because our Supreme Court in *Bald Eagle* has interpreted that section to mean that the arbitrator has sole and exclusive jurisdiction to hear disputes related to collective bargaining agreements, including disputes of whether a matter is arbitrable. Because Section 903 of PERA has been interpreted as such, Section 501(a) of the UAA, 42 Pa.C.S. § 7302(b), giving the trial court initial intervention is "inconsistent." [17]

Inasmuch as an inconsistency exists between the UAA and PERA, and pursuant to our Supreme Court's holding in *Bald Eagle*, the arbitrator has sole jurisdiction in the first instance to decide whether an issue is arbitrable. [18] As such, we expressly overrule all

of our previous decisions deciding otherwise. [19]

Accordingly, because we have determined that all questions of whether a matter is arbitrable must be decided in the first instance by an arbitrator, the order of the trial court granting the School District's application for stay of arbitration is reversed. As to its order reversing in part its July 16, 1993 order except insofar as the PLRB found that the School District's refusal to arbitrate or seek a stay of arbitration constituted an unfair labor practice, we affirm that portion of the order finding that the PLRB properly determined that the School District's refusal to arbitrate was an unfair labor practice. We reverse as to the trial court's determination that the School District's refusal to seek a stay of arbitration was an unfair labor practice.

## ORDER

AND NOW, this 24th day of February, 1995, the order of the Court of Common Pleas of Delaware County, No. 92–10911, dated March 1, 1994, granting the School District's application for stay of arbitration, is reversed. As to its order also dated March 1, 1994, reversing in part its July 16, 1993 order except insofar as the PLRB found that the School District's refusal to arbitrate or seek a stay of arbitration constituted an unfair labor practice, we affirm that portion of the order finding that the PLRB properly determined that the School District's refusal to arbitrate was an unfair labor practice. We reverse as to the trial court's determination that the School District's refusal to seek

**17.** The trial court still has full and independent powers to review collective bargaining agreements after the arbitrator has ruled on whether a matter is subject to arbitration.

**18.** While the School District argues that the collective bargaining agreement requires this matter to be determined by the School Code of 1949, that, too, would be a matter for the arbitrator to decide. To find otherwise would require us to ignore the intent of the General Assembly who enacted both PERA and the UAA.

**19.** Specifically, we overrule the following cases: *Mifflin County School District v. Lutz; Middle Bucks Area Vocational Technical School Edu-*

*cation Association v. Executive Council of the Middle Bucks Vocational Technical School; In re Glover; Phoenixville Area School District v. The Phoenixville Area Education Association; Central Bucks School District v. Central Bucks Education Association,* 157 Pa.Commonwealth Ct. 100, 629 A.2d 196 (1993) (not cited in this opinion but also holding that the trial court had jurisdiction first to determine whether an issue was arbitrable); and *Chester Upland Education Association v. Pennsylvania Labor Relations Board (Chester Upland I).* Any other opinions not cited in this opinion but decided contrary to this holding are also expressly overruled.

a stay of arbitration was an unfair labor practice.

SMITH, J., concurs in the result only.

DOYLE, Judge, concurring and dissenting.

I concur in the result reached by the majority which reversed the order of the trial court granting the Chester Upland School District a stay of the arbitration ordered by the Pennsylvania Labor Relations Board (PLRB, or Board) on April 6, 1993. I would affirm the second order of the common pleas court dated March 1, 1994, which affirmed the PLRB's order with respect to the Board's finding that the School District had committed an unfair labor practice (without reference to the unfair labor practice as being labeled "technical"). I would reverse that second order in all other respects, which would, in effect, affirm the Board's adjudication ordering the School District to arbitrate the grievance.[1]

I dissent, however, from the majority's legal conclusions that an arbitrator possesses the **"sole and exclusive"** jurisdiction to adjudicate the issue of arbitrability, and that Section 903 of the Public Employee Relations Act (PERA) [2] and Section 7304 of the Judicial Code, 42 Pa.C.S. § 7304, otherwise known as the Uniform Arbitration Act (UAA), are inconsistent and incompatible. In my view, these Acts have already been reconciled so that both should be given full effect with respect to the issue of jurisdiction in determining the arbitrability of a grievance under a collective bargaining agreement.

**1.** I am unclear why the majority would *reverse* "the trial court's determination that the School District's refusal to seek a stay of arbitration was an unfair labor practice." Op. at 629. The trial court *affirmed* the PLRB's finding that the "District's refusal to arbitrate or contemporaneously seek a stay of arbitration [from the Board] constituted an unfair labor practice." (Order of the Court of Common Pleas of Delaware County dated July 16, 1993). The School District did, of course, seek a stay of the arbitration proceedings from the common pleas court itself, but it is clear that the "stay" referred to in the trial court's order was a failure by the School District to either arbitrate or file exceptions to the hearing examiner's Proposed Decision and Order. I be-

## The Historical Significance of the Statutes

In 1925, the National Conference of Commissioners on Uniform State Laws drafted the first Uniform Arbitration Act.[3] Pennsylvania adopted it in 1927[4] and it became known as the Uniform Arbitration Act. Section 16 of the Uniform Arbitration Act of 1927 made it specifically applicable to "any written contract to which the Commonwealth of Pennsylvania ... or any ... political division of the Commonwealth shall be a party." 5 P.S. § 176. The Uniform Arbitration Act of 1927 did not contain any reference to the arbitration of disputes in collective bargaining agreements of public sector employees because public sector employees had no right to submit their grievances to binding arbitration. *Erie Firefighters Local No. 293 v. Gardner,* 406 Pa. 395, 178 A.2d 691 (1962). The right to submit public sector employee grievances to binding arbitration was not gained until November 7, 1967, when Article III, Section 31 of the Pennsylvania Constitution was amended.[5]

Under the Arbitration Act of 1927 the courts were authorized to stay the trial of any action until the arbitration of the dispute was complete if the agreement called for arbitration, and, could likewise "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 5 P.S. § 163.

It is clear, therefore, that prior to the adoption of PERA in *1970*, the courts of this Commonwealth were vested with the jurisdiction to determine the arbitrability of the grievance at issue. *Goldstein v. Internation-*

lieve the Board's order was correct and the trial court's affirmance of that order was also correct.

**2.** Act of July 23, 1970, P.L. 536, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

**3.** Peter H. Berge, *The Uniform Arbitration Act: A Retrospective on its Thirty-fifth Anniversary*, 14 Hamline L.Rev. 301, 304 (1991).

**4.** Arbitration Act of 1927, Act of April 25, 1927, P.L. 381, 5 P.S. §§ 161–181.

**5.** Section 31 of Article III had formerly been Section 20, Article III.

*al Ladies Garment Workers' Union,* 328 Pa. 385, 196 A. 43 (1938).

When the current version of the Uniform Arbitration Act (UAA) was adopted in Pennsylvania in 1980,[6] a full 10 years after PERA, the General Assembly reenacted in Section 7304 of the UAA the same basic provisions of law as had been in the earlier Arbitration Act of 1927. Section 7304 pertinently provides:

**Court proceedings to compel or stay arbitration**

(a) *Compelling arbitration.*—On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, **the court shall proceed summarily to determine the issue so raised** and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied. (Emphasis added.)

(b) *Stay of arbitration.*—On application of a party to a court to stay an arbitration proceeding threatened or commenced **the court may stay an arbitration on a showing that there is no agreement to arbitrate.** When in substantial and bona fide dispute, such an issue shall be forthwith and summarily tried and determined **and a stay of the arbitration proceedings shall be ordered if the court finds for the moving party.** If the court finds for the opposing party, the court shall order the parties to proceed with arbitration. (Emphasis added.)

Likewise, Section 7314(a)(1)(v) of the UAA also acknowledges the jurisdiction of the courts to determine, as a threshold issue, the issue of the arbitrability of the grievance in the first instance. Section 7314(a)(1)(v) pertinently provides:

**Vacating award by court**

(a) **General rule.**—

(1) On application of a party, the court shall vacate an award where:

. . . .

(v) there was no agreement to arbitrate and **the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings under section 7304 (relating to court proceedings to compel or stay arbitration)** and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing. (Emphasis added.)

Thus, it is rather evident that the courts are vested with jurisdiction to determine the threshold issue of arbitrability, since even *after* the creation of the PLRB,[7] which was vested with broad jurisdiction to adjudicate all unfair labor practices,[8] not just arbitrability, and even *after* PERA was adopted, the General Assembly in Section 7304 of the UAA, specifically expounded in clear terms that the courts were vested with jurisdiction to determine the threshold issue of arbitrability.

*Assuming arguendo* that PLRB's jurisdiction to determine unfair labor practices was in direct conflict with the provisions of the more recent adoption of the UAA in 1980, several principles of statutory construction compel us to conclude that the jurisdiction of the courts would be paramount. First, when a general provision in a statute is in irreconcilable conflict with a special or specific provision in the same or another statute, the specific provisions shall prevail. 1 Pa.C.S. § 1933; *Olshansky v. Montgomery County Election Board,* 488 Pa. 365, 412 A.2d 552 (1980). Second, whenever the provisions of two statutes are irreconcilable, the statute latest in date of final enactment will prevail. 1 Pa.C.S. § 1936; *Department of Transportation, Bureau of Driver Licensing v. Campbell,* 138 Pa.Commonwealth Ct. 337, 588 A.2d 75 (1991). Regardless of these principles, however, I nevertheless believe that Section 7304(a) is not inconsistent with Section 903 of

---

**6.** 42 Pa.C.S. §§ 7301–7362.

**7.** In 1937, the PLRB was created by the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, 43 P.S. §§ 211.1–211.13 (PLRA).

**8.** The term "unfair labor practices" is defined by sections 3 and 6 of the PLRA, 43 P.S. §§ 211.3, 211.6.

PERA, 43 P.S. § 1101.903,[9] and that the courts and the PLRB have concurrent jurisdiction to determine the issue of arbitrability; although not at the same time.

It should be acknowledged that as a general principle of statutory construction, "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both." 1 Pa.C.S. § 1933. Our Supreme Court, in addressing this very question of the possible inconsistent provisions of PERA and the Arbitration Act of 1927 has stated:

We hold, as did the Commonwealth Court, that the Arbitration Act of 1927 does apply to arbitration pursuant to PERA collective bargaining agreements....

[W]e perceive no conflict between the standard of review contained in the Arbitration Act of 1927 and that recognized by federal decisional law in the field of labor relations. The two are not significantly different. By the same token, we see no incompatibility in regard to scope of review between PERA and the Act of 1927, and decline to hold the latter statute to have been impliedly and *pro tanto* repealed by PERA, as appellee suggests.

*Community College of Beaver County v. Community College of Beaver County, Society of Faculty (PSEA/NEA),* 473 Pa. 576, 585, 587, 375 A.2d 1267, 1271–72 (1977).

The Supreme Court then continued:

The points at which the two statutes before us conflict are essentially as set forth in our opinion in *International Brotherhood of Fireman and Oilers, AFL–CIO Local 1201* [*v. School District,* 465 Pa. 356, 350 A.2d 804 (1976)]....[10]

....

... We do not find in these few points of difference sufficient indication that the General Assembly of Pennsylvania, in enacting PERA, created such 'irreconcilable conflict' as to justify a conclusion that the Act of 1927 in its entirety is inapplicable to PERA labor arbitration. **Where conflict does exist, of course, PERA, as the most recently enacted of the two statutes, takes precedence and controls.** Section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1930. (Emphasis added.)

*Id.* at 595–596, 375 A.2d at 1276.

Of course, the UAA adopted in 1980 would take precedence over PERA, since it was the most recently enacted of the two statutes, *if* they were inconsistent; which they are not.

The majority concludes that Section 903 of PERA is not only inconsistent with Section 7304(a), but further, that it is paramount and so prevailing that only an arbitrator is vested with the "sole and exclusive jurisdiction" to determine arbitrability in the final instance solely because PERA mandates that the arbitration of disputes or grievances "arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." This misperceives the very issue before the Court and by doing so, arrives in error at the wrong conclusion. The issue, succinctly stated, is whether the collective bargaining agreement even applies to the substantive dispute in question. While it is certainly true that an arbitrator *may* address that issue under PERA, that does not, and cannot, divest the courts of the Commonwealth of their jurisdiction to also determine the same issue of arbitrability when the General Assembly specifically conferred that jurisdiction on them ten years after PERA was adopted.[11] And, there is sound reason to

---

9. Section 903 of PERA pertinently provides: "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."

10. "[T]he two acts differ with respect to the selection of arbitrators in the absence of agreement by the parties. Compare Section 4 of the Act of 1927, 51 [sic] P.S. § 164, with subsection (2) of Section 903 [of PERA]." *International*

*Brotherhood,* 465 Pa. at 366, n. 9, 350 A.2d at 809, n. 9.

11. It seems strange to me that the majority of this Court can now conclude that Section 7304 of the UAA is incompatible and inconsistent with PERA, yet also conclude that Sections 7302(b) and 7302(d) of the UAA are not inconsistent and not incompatible with Act 111, a much more restrictive Act which permits police and fire personnel the right to organize and bargain with

place with the courts of this Commonwealth that jurisdiction because the most critical aspect of the issue of arbitrability is the importance of a prompt disposition of the substantive dispute.

### Case Law Precedent

The majority reaches the conclusion that Section 903 of PERA and Section 7304(b) of the UAA are unreconcilably inconsistent by relying entirely, and exclusively, upon the Supreme Court's decision in *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982). The majority opinion states:

> We hold that section 903 of PERA is not silent as to whether the arbitrator has jurisdiction because our Supreme Court in *Bald Eagle* has interpreted that Section to mean that the arbitrator has *sole and exclusive* jurisdiction to hear disputes related to collective bargaining agreements, including disputes of whether a matter is arbitrable. Because Section 903 of PERA has been interpreted as such, Section 501(a) of the UAA, 42 Pa.C.S. § 7302(b) [sic],[12] giving the trial court initial intervention is 'inconsistent.' (Emphasis added.) (Footnote omitted.)

The Supreme Court in *Bald Eagle*, however, never interpreted Section 903 in this manner, nor even inferred it. To the contrary, I believe that a close reading of *Bald Eagle* would lead to the opposite conclusion, that is, that of paramount importance is the "prompt disposition of disputes and the resolution of grievances under a collective bargaining agreement." This, in my view, would be accomplished by a swift application to a proper court, *if that issue were not already before the PLRB*.

The underlying procedural facts in *Bald Eagle* were never in dispute and they reveal

that the underlying substantive controversy involved a dispute over one day's pay for teachers who were on strike on September 12, 1975. The Bald Eagle Area Education Association, representing the teachers, filed an unfair labor practice charge with the PLRB on September 22, 1976, alleging that the school district refused to arbitrate the grievance. The PLRB ordered the school district to arbitrate the grievance and the school district **appealed** that determination to the common pleas court. The substantive grievance, therefore, never went to arbitration when the issue of arbitrability was **appealed** to the courts. **No action was ever preliminarily filed under Section 7304(b) of the UAA.** The common pleas court held that the grievance was not arbitrable. On further appeal, this Court affirmed that determination, and, after a protracted period of litigation involving, not the grievance itself but the issue of arbitrability, Justice Hutchinson of the Supreme Court in understandable exasperation opined:

> The wisdom of the policy favoring arbitration of grievances arising under a collective bargaining agreement and the folly of permitting a *full* preliminary bout in the courts over the issue of an arbitrator's jurisdiction is demonstrated by this case. We find it absurd that, after six years, the substantive issue of one day's pay for the Bald Eagle Area teachers has not been determined while the courts yet another time have examined the PERA policy favoring arbitration.

*Id.* at 67–68, 451 A.2d at 673 (emphasis added).

The protracted litigation and delay in *Bald Eagle* in reaching the real issue occurred because there was an **appeal** to the courts from the Board's determination that the subject grievance was arbitrable. That would not be the situation where no unfair labor

---

their public employers over terms of employment. *See,* Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10; *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt),* 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993), *petition for allowance of appeal denied,* 538 Pa. 617, 645 A.2d 1320 (1994).

**12.** I believe the intended section of the UAA is § 7304(b) "Stay of Arbitration," rather than Section 7302(b). Section 7304(b) gives either party to the collective bargaining agreement the right to apply to a court to stay an arbitration "by a showing that there is no agreement to arbitrate." Section 501(a) of the Act of October 5, 1980, P.L. 693, encompasses all twenty sections of the UAA, 42 Pa.C.S. §§ 7301–7320.

charge has been filed with the Board; obviously, there can be no appeal from a PLRB determination when there is no determination to appeal.

The Supreme Court in *Bald Eagle* quite clearly inferred that *once an unfair labor charge has been filed,* **then** the Board has exclusive jurisdiction to determine the issue of arbitrability if that issue is placed before it. But, once a party has filed an equity action under Section 7304 of the UAA with the proper court, the courts are vested with jurisdiction to determine the issue of arbitrability in the first instance, and jurisdiction may not be divested by a later application to the PLRB alleging an unfair labor practice.

In effect, once either the PLRB or a court exercises jurisdiction over the subject matter in question, that is, the issue of arbitrability, that jurisdiction cannot be divested by a subsequent application by the opposing party to any other tribunal under a different statute. That, I believe is the full import of *Bald Eagle,* and that principle can be read in complete harmony with the further articulation of Justice Hutchinson in his opinion:

> Bearing in mind the importance of prompt disposition of disputes and resolution of grievances under a collective bargaining agreement and the concomitant strong policy articulated in the PERA requiring the submission of such disputes to arbitration in the first instance, we reverse the order of the Commonwealth Court, 44 Pa. Cmwlth. 254, 403 A.2d 1038 [1979], and reinstate the order of the PLRB to proceed to arbitration. Like PLRB, we do not decide the merits of the dispute.

*Id.* at 64, 451 A.2d at 672.

This analysis is comparable procedurally to the situation where a litigant preliminarily objects to the subject matter of a tribunal.

An order dismissing such an objection is interlocutory and not appealable as a right. *See Department of Transportation Appeal,* 81 Pa.Commonwealth Ct. 262, 473 A.2d 262 (1984).

I further believe that we can glean the Supreme Court's views on this vexing problem by observing those recent decisions of this Court wherein we held that the courts of common pleas do have jurisdiction to determine arbitrability in the first instance and the further treatment of those decisions by the Supreme Court; specifically, *Mifflin County School District v. Lutz,* 122 Pa.Commonwealth Ct. 112, 551 A.2d 396 (1988), *petition for allowance of appeal denied,* 523 Pa. 638, 565 A.2d 446 (1989); *Middle Bucks Area Vocational Technical School Education Association v. Executive Council of the Middle Bucks Area Vocational Technical School,* 122 Pa.Commonwealth Ct. 595, 552 A.2d 763, *petition for allowance of appeal denied,* 522 Pa. 606, 562 A.2d 828 (1989); *In re Glover,* 137 Pa.Commonwealth Ct. 429, 587 A.2d 25, *petition for allowance of appeal denied,* 528 Pa. 633, 598 A.2d 286 (1991).

All of these decisions held that a court of common pleas had jurisdiction to determine the issue of arbitrability in the first instance, and all of the decisions were decided after the Supreme Court's 1982 decision in *Bald Eagle.* Of critical importance is the salient fact that in none of them was an unfair labor practice charge filed with the PLRB. While acknowledging that a denial of a petition for allowance of appeal is certainly not precedential, the observation is inescapable that had the High Court viewed the law differently in such an important area of the law and had it desired to adopt a different rule of law, it could have availed itself of the opportunity to do so in any one of those cases.[13]

---

**13.** We note that in *Middle Bucks,* the only issue before the Commonwealth Court was the potential conflict between Section 903 of PERA and Section 7304(b) of the UAA. Judge Alexander F. Barbieri cogently wrote:

> On appeal, Appellant asserts that the trial court had no jurisdiction to enter a stay because Section 903 of the PERA, 43 P.S. § 1101.903, compels the submission of all disputes arising out of the collective bargaining agreement to arbitration and it is the arbitrator

who determines in the first instance whether or not an issue is arbitrable. We are thus presented with an apparent conflict between Section 7304(b) of the Uniform Arbitration Act and Section 903 of the PERA.

. . . .

> While Section 903 of the PERA does require arbitration of disputes arising out of the interpretation of the provisions of the agreement, it is silent as to who interprets whether the dispute is arbitrable or not. By contrast, Section

Moreover, the last pronouncement by this Court on this issue in *Chester Upland Education Association v. Pennsylvania Labor Relations Board,* 158 Pa.Commonwealth Ct. 134, 631 A.2d 723 (1993) (*Chester Upland I* ), where this Court effectively took into consideration all of the past precedent of this Court, as well as the two definitive decisions of the Supreme Court in *Bald Eagle* and *Office of Administration v. Pennsylvania Labor Relations Board,* 528 Pa. 472, 598 A.2d 1274 (1991). While *Chester Upland I* recognized that in *Bald Eagle* and *Office of Administration,* the Supreme Court held that the issue of arbitrability was for the arbitrator in the first instance, it further recognized that in both of those Supreme Court appeals there was never any prior proceeding filed by either party under Section 7304(b) of the UAA. Both *Bald Eagle* and *Office of Administration* involved **appeals** from a decision of the PLRB ordering the parties to submit the grievance to arbitration. Judge Charles A. Lord, writing for our Court,[14] astutely articulated a summary of the law, which is set out in the majority's opinion on pages 15, 16.

The only unarticulated lacuna in *Chester Upland I,* a determination which was unnecessary to reach a decision in that appeal, is a definitive statement of exactly when the jurisdiction of one tribunal attaches to the exclusion of the other. That interstitial conclusion, very obviously, is when either an unfair labor practice charge is filed with the PLRB or an application under Section 7304(b) is filed with the appropriate court.

Some legal commentators have criticized this reconciliation of Section 7304(b) of the UAA and Section 903 of PERA as a "race to the courthouse"[15] because "the Commonwealth Court has created a situation where the PLRB and the common pleas courts can and will reach contradictory decisions."[16] The fallacy of this criticism, however, lies in the commentator's failure to recognize that once the jurisdiction of the PLRB has attached, any subsequent application to the common pleas court should be quashed upon the application of the opposing party. In none of the cases reviewed by this Court or cited in the law review article was such an application presented. Moreover, the compelling public policy behind this procedure is the swift determination of the threshold issue of whether the controversy/grievance should even be placed before an arbitrator. Ultimately it *will* be the courts which will determine that issue, either in the first instance or on appeal. If that issue can be determined by a swift initial application to a court, it will advance the ultimate final adjudication, which is the underlying public policy of this Commonwealth.

This criticism has already been answered by Judge Barbieri's cogent analysis in *Middle Bucks* when he wrote that "Section 7304(b) is a pre-emptive measure [and] it must be used before the arbitration proceedings commence. We hold that while Section 7304(b) of the Act permits a party to petition the trial court for a preliminary determination of whether or not an issue is arbitrable under the terms of the collective bargaining agreement, once the arbitration proceedings

7304(b) expressly permits the trial court to stay an arbitration if it determines there is no agreement to arbitrate the dispute. We must give effect to the specific language of Section 7304(b).

We do not wish to suggest that the arbitrator no longer has the power to determine whether or not an issue is arbitrable *once the parties are before him. See Mifflinburg Area Education Association v. Mifflinburg Area School District [118 Pa.Cmwlth. 328, 545 A.2d 419 (1988) ]. Section 7304(b) is a pre-emptive measure, it must be used before the arbitration proceedings commence. We hold that while Section 7304(b) of the Act permits a party to petition the trial court for a preliminary determination of whether or not an issue is arbitrable under the terms of the collective bargaining agreement, once the*

*arbitration proceedings actually begin, the arbitrator's determinations regarding the subject matter of a grievance are controlling.* (Emphasis added.) (Citation omitted.)
*Id.* at 599–600, 552 A.2d at 765.

**14.** *See* Section 256 of our Internal Operating Procedures.

**15.** *See* Mark P. Widoff with Michelle Fastiggi, *The Judiciary's Role in Compelling or Staying Public Employment Grievance Arbitration Under Pennsylvania's Enactment of the Uniform Arbitration Act: Reconciling PERA and the U.A.A.,* 98 Dick.L.Rev. No. 4, 630, 631–656 (1994).

**16.** *Id.* at 654.

actually begin, the arbitrator's determination regarding the subject matter of a grievance are controlling." *Id.* at 600, 552 A.2d at 765.

### The Circumstances in this Appeal

By reference to the underlying facts presented in this appeal, and applying the principles above discussed, we are led to the inescapable conclusion that the issue of arbitrability was properly before the PLRB, and properly for the arbitrator to decide, once the Chester Upland Education Association filed its charge of an unfair labor practice with the Board on July 9, 1992. By a quick reference to the sequence of the two proceedings, one before the common pleas court and the other before the PLRB, it becomes immediately obvious that the School District did not file its application with the court until July 28, 1992, which was well after the Association had filed its charge of an unfair labor practice with the PLRB on July 9, 1992.[17]

### Before the PLRB

April 20, 1992   Association files grievance with the School District

May 15, 1992   Association sends letter to the School District to select an arbitrator

July 9, 1992   Unfair labor practice filed by the Association (letter sent 7–7–92) with the PLRB

Sept. 1, 1992   PLRB issues complaint

Sept. 30, 1992   PLRB hearing

Nov. 10, 1992   Proposed Decision and Order

Nov. 30, 1992   School District files exceptions to PDO

April 6, 1993   Final Order of PLRB

April 14, 1993   Petition for review with Commonwealth Court filed

### Before the Court of Common Pleas of Delaware County

July 28, 1992   School District files equity action requesting a stay under Section 7304(b) of the UAA; PLRB not a party

Once jurisdiction of the PLRB was complete on July 9, 1992, any subsequent attempt by the School District to have the issue of arbitrability heard before the court of common pleas should have been quashed because jurisdiction over the subject matter had already attached to the Board.

---

17. The majority has stated that *"[b]ecause* the PLRB ... found that the School District had violated Section 1201(a)(5) of PERA by refusing to arbitrate the grievance, the School District filed a petition for review and a petition for injunction with the trial court seeking a reversal of the PLRB's order...." Majority at 624. This is an inaccurate statement of the facts. The School District filed its application for a stay with the common pleas court three months before the PLRB's proposed decision and order was entered.