Philadelphia Housing Authority, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee.

Argued April 6, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Thomas Patrick Kelly*, with him *James M. DeLeon*, for appellant.

*Frayda Kamber*, with her *James L. Crawford* and *Anthony C. Busillo, III*, for appellee.

*Kenneth E. Aaron*, for Philadelphia Housing Authority Employees.

OPINION BY JUDGE BARBIERI, June 24, 1983:

The employer, the Philadelphia Housing Authority, (PHA) appeals from an order of the Court of Common Pleas of Philadelphia County, which affirmed an order of the Pennsylvania Labor Relations Board (PLRB),

finding PHA guilty of an unfair labor practice under the Public Employes' Relations Act (P.E.R.A.), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101 – 1101.2301.

On October 12, 1978, employes of the PHA filed unfair labor practice charges with the PLRB alleging that their employer, the PHA, and their union, the National Union of Security Officers, Local #1, (NUSO) had unlawfully withheld union dues from their wages after the employes had submitted dues revocation and membership resignation forms on August 22, 1978.

What precipitated the resignation of PHA employes from their union, NUSO, was the expiration of the collective bargaining agreement between PHA and NUSO on March 31, 1978, and the failure of either party to renew same. PHA and NUSO had begun to renegotiate their agreement, but PHA broke off negotiations after it learned from another union that it was seeking to displace NUSO as the exclusive bargaining agent for PHA's employes. In response to this development, PHA on or about September, 1978, while continuing to withhold union dues from employes, declined to forward dues to NUSO, as PHA had reason to believe NUSO's majority status with PHA's employes was in jeopardy.

In reponse to PHA's failure to remit dues to NUSO after September, 1978, NUSO submitted a grievance for arbitration to compel PHA to remit dues as required by the collective bargaining agreement between them. By decision dated June 25, 1979, the arbitrator found that the agreement between PHA and NUSO had never expired and, therefore, ordered PHA to pay the dues it had collected, but never forwarded to NUSO. PHA paid over to NUSO the escrowed dues pursuant to the arbitration award, during the pendency of the PLRB proceedings, upon indemnity agreement from NUSO.

On September 24, 1981, however, the PLRB, acting upon the unfair practice filed by PHA's employes on October 12, 1978, found (contrary to the arbitrator's decision) that the agreement between PHA and NUSO had expired on March 31, 1978,[1] that PHA and NUSO had committed unfair labor practices, and consequently ordered each to pay back to PHA's employes the dues wrongfully withheld from them. PHA appealed this decision to the court of common pleas, which court dismissed the appeal, and the present appeal followed.

PHA's initial contention is that the PLRB should be bound by the arbitrator's award in this case. In support of this position, PHA relies upon Section 903 of P.E.R.A., 43 P.S. §1101.903, which states that arbitration of disputes or grievances arising out of the interpretation of a collective bargaining agreement is mandatory. Given such a requirement, PHA contends that the PLRB is without the power to retry or disregard an arbitration award.

What proves to be fatal to PHA's argument is the fact that the PLRB in this case was not reviewing an arbitration award, but rather was ruling upon an entirely separate proceeding; the unfair labor practice charge brought by the employes of PHA against PHA. Solely because there existed a factual determination relevant to both the arbitration and the unfair practice proceedings, does not render the unfair practice pro-

---

[1] By letter dated January 27, 1978, NUSO informed PHA that it wished to enter into negotiations for a new contract which was to take effect upon the expiration of the then existing contract on March 31, 1978. For unexplained reasons, this letter was never placed into evidence before the arbitrator. This possibly accounts for why the PLRB and the arbitrator found differently as to whether or not there was a valid agreement between PHA and NUSO subsequent to March 31, 1978.

ceedings a review of the arbitrator's decision.[2] The difficulties PHA might have had in reconciling the arbitrator's award with the PLRB's resolution of the unfair practice charges, cannot take precedence over Section 1301 of P.E.R.A., 43 P.S. §1101.1301, which grants the PLRB exclusive jurisdiction to hear unfair labor charges.

Section 1301 of P.E.R.A. states in relevant part that

The [PLRB] ... is empowered ... to prevent any person from engaging in any unfair practice listed in Article XII of this act. *This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.* (Emphasis added).

The clear wording of this statute prevents us from giving any credence to PHA's argument that Section 903 of P.E.R.A. acts as a bar to Section 1301. Faced with a similar situation, this court in *Pennsylvania Labor Relations Board v. General Braddock Area School District*, 33 Pa. Commonwealth Ct. 55, 380 A.2d 946 (1977), refused to hold that the PLRB had to stay its proceedings on charges of unfair labor practices pending the outcome of a grievance arbitration. We stated in *Braddock* that

[a]s observed by Justice Pomeroy, speaking for our Supreme Court in Hollinger v. Department of Public Welfare, 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976), where a party seeks redress of an unfair labor practice, "jurisdiction to determine whether an unfair labor practice has

---

[2] It is worth noting, that P.E.R.A. does not grant the PLRB power to review an arbitrator's decision, but rather the review of an arbitrator's decision lies properly with either this Court, or the court of common pleas. *See* Sections 763(b) and 933(b) of the Judicial Code, *as amended*, 42 Pa. C. S. §§763(b) and 933(b).

occurred and, if so, to prevent a party from continuing the practice is in the PLRB, and nowhere else." We cannot, therefore, conclude that the PLRB is powerless to investigate charges of unfair labor practices merely because a collective bargaining agreement exists under which grievance arbitration is available for the determination of issues similar to those upon which the charges are based.

*Id.* at 63, 380 A.2d at 950.

We do not mean to say that the PLRB must always disregard the outcome of an arbitration, as we do recognize that in certain circumstances the PLRB does defer to an arbitration award,[3] but we do wish to make clear that when the PLRB does choose to exercise its jurisdiction over unfair practices, such jurisdiction is exclusive.

PHA's next argument, seizes upon language used by the PLRB in reasoning why it would not defer to the arbitrator's decision in this case, as an additional reason why PHA should not be liable for dues wrongfully withheld from its employes. The PLRB in its decision stated, it

[W]ill not defer to arbitration awards involving issues of dues revocation and resignation from ... [a] union.... [This] position is based on the fact that individual employes are not represented adequately in proceedings before an arbitrator involving the incumbent union and the employer. In the overwhelming number of such cases the real dispute is between the employes seeking to resign from the union and revoke dues checkoff and the incumbent

---

[3] *See Pennsylvania Labor Relations Board v. Pine Grove Area School District*, 10 PPER ¶10167, where the PLRB outlines the criteria it uses in deciding when and when not to defer to an arbitration award in unfair labor practice proceedings.

bargaining representative and/or the Employer. Many times there is no dispute between the employer and the incumbent, which is generally the matter which comes before an arbitrator. In many of such cases the employer is merely seeking an answer to the problem and has no vested interest in resolution of the problem facing the incumbent representative or the positions of the employes. Under such circumstances it has been the position of the Board that it will not defer to grievance arbitration awards involving dues revocation and resignation since one of the principals to the dispute is not represented in the arbitration process.

The PHA, taking exception to PLRB's statement that "individual employes are not represented adequately in proceedings before an arbitrator," argues that the PLRB is thus holding PHA responsible for NUSO's failure to adequately represent the employes at arbitration. The above passage read in its entirety, however, demonstrates that inadequate representation was not the reason why PHA was found guilty of an unfair labor practice, but, rather, the PLRB was holding PHA liable for its *own* wrongful actions in withholding dues from its employes. Further, the fact that NUSO was also found guilty of an unfair labor practice, does not absolve PHA of its own liability.

Lastly, PHA argues that the PLRB should be estopped from exercising its subject-matter jurisdiction of the unfair labor practice in this case on the ground that the PLRB took nearly three years to render its decision and thereby violated its statutory obligation to act with speed and dispatch as required by Section 1305 of P.E.R.A., 43 P.S. §1101.1305.[4] PHA cites no

---

[4] *See Nyo v. Pennsylvania Labor Relations Board,* 53 Pa. Commonwealth Ct. 646, 419 `A.2d 244 (1980); where this Court in-

authority for this novel proposition, and we are unable to find any. In fact, the PLRB charges were filed on October 12, 1978, the final evidentiary hearing was held on July 23, 1980 and the Nisi decision and order are dated September 24, 1981. Thus, there was a delay of fourteen months in rendering a decision.[5] PHA argues that, unless we somehow nullify the PLRB award, as it urges, it will be required to pay again the amount paid to NUSO because NUSO is now financially irresponsible and, therefore, NUSO's indemnity agreement is unenforceable.

While we do not wish to condone undue delay, we see PHA's loss, if any, as a self-inflicted one. Its payment to NUSO was clearly with full knowledge of the hazard, as demonstrated by its demand for indemnity. Its loss, if the indemnity proves to be worthless, is not due to the delay, but rather to its decision to accept as reliable NUSO's promise to indemnify.

We will affirm the order of the court of common pleas.

## Order

And Now, this 24th day of June, 1983, the order of the Court of Common Pleas of Philadelphia County, dated June 16, 1982, is hereby affirmed.

---

dicated that a person might obtain relief from the PLRB's failure to act with speed and dispatch if they can successfully allege affirmative fraud, deception, or concealment of fact in the delay.

[5] The Board lacked a quorum from March to July 21, 1981.