**STATE SYSTEM OF HIGHER EDUCATION, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2002.

Decided March 19, 2003.

Joseph F. Quinn, Pittsburgh, for petitioner.

Jennifer E. Will, Harrisburg, for respondent.

James L. Cowden, Harrisburg, for intervenor, Assoc. of PA State College and University Faculties.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The State System of Higher Education (SSHE) appeals from the January 15, 2002 Final Order of the Pennsylvania Labor Relations Board (PLRB) that dismissed SSHE's exceptions and made absolute and final the Proposed Decision and Order of the hearing examiner. SSHE presents two questions for review: whether the PLRB erred by failing to find that the parties were obligated to negotiate over wages, hours and working conditions for positions included in a bargaining unit by order of unit clarification and whether substantial evidence existed to support the conclusion that the parties contemplated the wages, hours and working conditions of non-faculty trainers in the 1999 contract negotiations.

In 1971, by decision in case number PERA–R–775–C, the PLRB certified the Association of Pennsylvania State College and University Faculties (APSCUF) to represent certain SSHE faculty and other employees in a bargaining unit known as the "Unit I" faculty. In 1997 APSCUF filed a unit clarification petition with the PLRB, requesting that approximately twelve athletic trainers who did not have faculty status be included in Unit I. Unit I already included some thirty athletic trainers with faculty status. Before the PLRB rendered a decision, SSHE and APSCUF commenced negotiation of a new collective bargaining agreement (CBA) to replace the one that expired on June 30, 1999. On

October 19, 1999, the PLRB amended AP-SCUF's certification to include in Unit I the twelve non-faculty trainers. *Employes of the State System of Higher Education,* 30 Pa. Pub. Emp. R. ¶ 30222 (PLRB Oct. 19, 1999) (final order), *aff'd, State System of Higher Education v. Pennsylvania Labor Relations Board,* 757 A.2d 442 (Pa. Cmwlth.2000). On October 20, 1999, SSHE and APSCUF agreed to a new CBA, which they formally executed on January 13, 2000. The CBA defined "faculty" and "faculty members" as including all members in the bargaining unit described in PERA–R–775–C (i.e., Unit I).

By letter dated January 10, 2000, SSHE informed APSCUF that the parties would have to negotiate the terms of employment for the non-faculty trainers now included in Unit I. APSCUF contended that the non-faculty trainers were covered already by the new CBA. On or about April 3 SSHE filed a charge of unfair labor practices, alleging that APSCUF had violated Section 1201(b)(3) of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201(b)(3), which requires employee organizations to "bargain collectively in good faith with a public employer." AP-SCUF then filed its own charge of unfair labor practices and also filed two related grievances, objecting to SSHE's refusal to apply the CBA to the non-faculty trainers. The hearing examiner deferred consideration of APSCUF's charge because its grievances were pending before the arbitrator but proceeded with SSHE's charge.[1]

■ Before the hearing examiner, SSHE's Director of Labor Relations,

---

1. The arbitrator issued a decision in regard to APSCUF's two grievances holding that the non-faculty trainers were members of the Unit I bargaining unit and as such their terms of employment should be determined in accordance with the CBA. SSHE appealed, and in *State System of Higher Education v. Association of Pennsylvania State College and University Faculties,* 800 A.2d 983 (Pa.Cmwlth. 2002), the Court vacated the arbitrator's decision and remanded for clarification of certain of his findings.

Thomas Krapsho, testified that at no time during the thirteen months of negotiations over the CBA had the parties ever discussed the status or terms of employment for the non-faculty trainers. He also testified that the CBA did not contain any provisions addressing the non-faculty trainers and that it was SSHE's position that the terms of their employment must be negotiated. The hearing examiner concluded that the non-faculty trainers were accreted into Unit I by the October 1999 PLRB decision; that the CBA definition of "faculty" included members of the Unit I bargaining unit; and that the CBA was not signed until after the non-faculty trainers were included in Unit I. Therefore, APSCUF had a "sound arguable basis" for believing that the non-faculty trainers were covered by the CBA and that APSCUF did not have to negotiate with SSHE over the terms of employment for those trainers.[2] Proposed Decision and Order at A–4.

The PLRB agreed that because the non-faculty trainers had been accreted into Unit I before the CBA was signed, APSCUF had a sound arguable basis in the CBA for declining further negotiations. In so concluding, the PLRB emphasized the professional and educational similari-

ties between the faculty and non-faculty trainers, and in support it referenced *State System of Higher Education v. Association of Pennsylvania State College and University Faculties*, 800 A.2d 983 (Pa. Cmwlth.2002). The PLRB also emphasized that the non-faculty trainers were included in the bargaining unit before the CBA was signed. Citing its decision in *Saucon Valley Education Association*, 32 Pa. Pub. Emp. R. ¶ 32167 (PLRB Aug. 21, 2001) (final order), the PLRB reasoned that when evidence exists that the parties previously contemplated the terms of employment for a new position, the existing CBA applies and no negotiations are necessary. The CBA here provided evidence that the parties had contemplated the terms of employment for individuals performing the duties of athletic trainers; consequently, the nearly identical non-faculty trainers were covered by the CBA and no negotiations were necessary.[3]

■ Before this Court, SSHE argues that Pennsylvania law requires in all circumstances negotiation of the terms of employment for positions newly accreted into a bargaining unit, and it cites several PLRB decisions to support this proposition.[4] SSHE asserts that nothing in these

---

**2.** A charge that a union has committed an unfair labor practice in violation of Section 1201(b)(3) by refusing to bargain in good faith will not be sustained if it is found that the union had a "sound arguable basis" for believing that its decision or action at issue was in conformity with a collective bargaining agreement. *State System of Higher Education*, 20 Pa. Pub. Emp. R. ¶ 20125 (PLRB June 21, 1989) (final order).

**3.** The Court's review of the PLRB's final order is prescribed in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. The Court shall affirm unless it determines that the adjudication is in violation of constitutional rights, that it is not in accordance with law, that provisions relating to practices of Commonwealth agencies in Sections 501–508 of

the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, have been violated or that any necessary finding of fact is not supported by substantial evidence. *See also Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

**4.** In the order cited in SSHE's brief: *Carbon–Lehigh Education Association Intermediate Unit 21*, 18 Pa. Pub. Emp. R. ¶ 18097 (PLRB April 21, 1987) (final order); *Community College of Beaver County Clerical–Secretarial–Technical–Janitorial–Maintenance School Service Personnel Association*, 23 Pa. Pub. Emp. R. ¶ 23012 (PLRB Dec. 12, 1991) (hearing examiner's proposed decision and order), 23 Pa. Pub. Emp. R. ¶ 23070 (PLRB March 17,

decisions supports the PLRB's position that functional similarities between the faculty and non-faculty trainers are legally relevant when determining whether the parties must negotiate terms of employment for the non-faculty trainers. SSHE also argues that the PLRB misapplied its own decision in *Saucon Valley*, because that case involved instead a school district which attempted to evade a CBA by replacing a union psychologist position with a newly created, non-union Director of Psychology. Next, SSHE asserts that the fact that the parties executed the CBA almost three months after the non-faculty trainers were added to Unit I is irrelevant, because the parties never discussed the status of non-faculty trainers either before or after the conclusion of negotiations in 1999. Moreover, the legally relevant question is whether the parties negotiated terms of employment for the non-faculty trainers. Finally, SSHE maintains that no evidence exists to support a conclusion that the parties discussed or otherwise contemplated the terms of employment for the non-faculty trainers.

As the PLRB emphasizes, this is not the first occasion on which this Court has considered the status of SSHE's non-faculty athletic trainers. In *State System of Higher Education v. Association of Pennsylvania State College and University Faculties*, 800 A.2d 983 (Pa.Cmwlth.2002), this Court reviewed an arbitrator's award determining that the same non-faculty athletic trainers at issue here, except for faculty status, were identical to faculty train-

ers and therefore were covered by the CBA executed on January 13, 2000. The Court, adopting an analysis set forth in *Howell Educational Secretaries Association, MESPA v. Howell Public Schools*, 130 Mich.App. 546, 343 N.W.2d 616 (1983), concluded that "if the duties of non-faculty trainers were substantially similar to those of faculty athletic trainers, then the terms of the CBA would apply and, if not, negotiation of a new contract would apply." *State System of Higher Education*, 800 A.2d at 987–988. The Court adhered to the principle that if positions virtually identical to those already covered by an existing CBA are accreted into a bargaining unit, the accreted positions should be covered by the agreement.

After review of the record and arguments presented in this appeal, the Court sees no reason to depart from the analysis and conclusion set forth in *State System of Higher Education*. Throughout two appeals on the status of the non-faculty trainers, no evidence has been presented suggesting that their functions, duties or other relevant characteristics are substantially different from those of faculty trainers. Moreover, federal and state courts and the National Labor Relations Board have concluded that, when determining whether negotiations are necessary over the terms of employment for employees newly accreted into a bargaining unit, the functional similarities between the accreted and already covered employees is a legitimate consideration.[5] None of the

---

1992) (final order), *aff'd*, 24 Pa. Pub. Emp. R. ¶ 24110 (C.P. of Beaver County 1993); *Employes of Luzerne Intermediate Unit No. 18*, 30 Pa. Pub. Emp. R. ¶ 30120 (PLRB May 25, 1999) (final order); and *Employes of Norwin School District*, 31 Pa. Pub. Emp. R. ¶ 31104 (PLRB June 20, 2000) (final order).

**5.** *See National Labor Relations Board v. Abex Corp. Aerospace Div.*, 543 F.2d 719 (9th Cir.

1976) (holding that when services to be provided by newly included employees are nearly identical to those provided by already covered employees, employer may apply the existing CBA to the new employees); *City of Dubuque v. Public Employment Relations Board*, 339 N.W.2d 827 (Iowa 1983) (holding that city cannot be forced to apply terms of existing bargaining agreement to newly added, functionally dissimilar employees who would dou-

cases that SSHE cites addresses the substantive issue here, i.e., whether parties must negotiate the terms of employment for employees recently accreted into a bargaining unit when the accreted employees' duties are virtually identical to those of employees already covered by the newly negotiated CBA.[6]

This Court has often noted that the PLRB "possesses administrative expertise in the area of public employee labor relations and that great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith." *Richland School District v. Pennsylvania Labor Relations Board*, 71 Pa. Cmwlth. 45, 53–54, 454 A.2d 649, 652 (1983). This Court will not lightly substitute its judgment for that of the PLRB in the areas of its special expertise and experience. *Lehighton Area School District v. Pennsylvania Labor Relations Board*, 682 A.2d 439 (Pa.Cmwlth.1996). The Court discerns no reversible error by the PLRB, and its Final Order is affirmed.

---

ble the size of the bargaining unit); *Howell Educational Secretaries Association*; *Federal–Mogul Corp., Bower Rolling Bearing Div.*, 209 NLRB 343 (1974) (seminal NLRB case concluding that when 140 functionally distinct "setup men" were added to a bargaining unit of 2000 regular production and maintenance employees, parties must negotiate the terms of employment for the newly added employees). Thus Mr. Krapsho's testimony that during contract negotiations SSHE and APSCUF did not specifically discuss the status of nonfaculty trainers is not persuasive, for the parties did address the terms of employment for the nearly identical faculty trainers, and in the circumstances of this case that is sufficient to support the PLRB's assertion that the parties "contemplated" the status of the nonfaculty trainers.

## ORDER

AND NOW, this 19th day of March, 2003, the order of the Pennsylvania Labor Relations Board is hereby affirmed.

---

6. See, among others, *Carbon–Lehigh Education Association Intermediate Unit 21*, 18 Pa. Pub. Emp. R. ¶ 18097 (PLRB April 21, 1987) (final order) (substitute teachers were accreted into bargaining unit of regular teachers where CBA was already in place); *Employes of Luzerne Intermediate Unit No. 18*, 30 Pa. Pub. Emp. R. ¶ 30120 (PLRB May 25, 1999) (final order) ("treatment facilitator" and "transition services specialist" duties were either novel or were altered so that the parties had to negotiate new terms of employment); and *Employes of Norwin School District*, 31 Pa. Pub. Emp. R. ¶ 31104 (PLRB June 20, 2000) (final order) (PLRB included an athletic trainer in professional bargaining unit which previously contained no athletic trainers).