Common Pleas of Dauphin County is **AF-FIRMED.**

# INDIANA AREA SCHOOL DISTRICT

### v.

# INDIANA AREA EDUCATION ASSOCIATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2006.

Filed Feb. 20, 2007.

William C. Andrews, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The Indiana Area Education Association (Association) appeals from the order of the Court of Common Pleas of Indiana County that vacated an arbitrator's award sustaining the Association's grievance filed against the Indiana Area School District (School District). The grievance arose out of the School District's denial of the rights and status under the collective bargaining agreement (CBA) to the school nurse assistant RNs (nurse assistant RNs). The questions for review are whether the arbitrator had authority to decide the applicability of the CBA to the nurse assistant RNs added to the bargaining unit after the execution of the CBA pursuant to an order of the Pennsylvania Labor Relations Board (Board) and whether the trial court failed to follow its limited scope of review.

I

On April 30, 2001, the School District and the Association entered into a CBA covering the period July 1, 2001 through June 30, 2007. The CBA recognized the Association "as the exclusive representative for purposes of collective bargaining with respect to wages, hours and other terms and conditions of employment." Article II, Section 1 of the CBA; Reproduced

Robert J. Abraham, Pittsburgh, for appellant.

Record (R.R.) at 209a. The CBA provided:

> The unit deemed appropriate in the aforementioned certification shall include all eligible employees under the [Public Employe Relations] Act in the following categories under the jurisdiction of the District:
>
> ● **Classroom Teachers Under Contract**
>
> ● *Nurses Under Contract*
>
> ● **Dental Hygienists Under Contract**
>
> ● **Guidance Counselors Under Contract**
>
> ● **Speech Therapists Under Contract**
>
> ● **Librarians Under Contract**
>
> .... The term 'employee' and 'teacher' are used interchangeably herein.

Article II, Section 2; R.R. at 210a (emphasis added).

On March 20, 2002, the Association filed a petition with the Board for unit clarification to include the nurse assistant RN positions in the bargaining unit. After the School District agreed to their inclusion, the Board issued a Nisi Order of Unit Clarification on September 9, 2002 amending the December 10, 1970 certification to include the nurse assistant RN positions in the unit. At relevant times, the School District employed three certified school nurses at three junior and senior high schools and three nurse assistant RNs at three elementary schools.

By letter dated September 19, 2002, the Association requested confirmation from the School District that the nursing assistant RNs were being provided the same rights, benefits and privileges as other nurses in the bargaining unit. The School District responded that because the nurse assistant RNs were not identified in the CBA, their salary schedule, fringe benefits and leave entitlement should be negotiated. On October 28, 2002, the Association filed a grievance on behalf of the nurse assistant RNs alleging that the School District violated the CBA by denying bargaining unit rights and status. The School District refused to schedule a hearing to process the grievance or to select an arbitrator from the list provided by the Bureau of Mediation, stating that the issue was not arbitrable but that it would negotiate as to the new category of nurse assistant RN.[1]

On February 6, 2003, the School District filed an unfair labor practice charge against the Association under Section 1201(b)(3) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201(b)(3) (refusing to bargain collectively in good faith with a public employer), docketed at No. PERA–C–03–41–W (Case No. 41). On February 20, 2003, the Association filed an unfair labor practice charge against the School District under Section 1201(a)(1) and (5) (interfering, restraining or coercing employees in the exercise of the rights under the Act and refusing to bargain collectively in good faith with an employee representative), docketed at No. PERA–C–03–61–W (Case No. 61). The matters were consolidated for hearing.

In the Proposed Decision and Order issued March 1, 2004 in Case No. 41, the hearing examiner rejected the Association's argument that its refusal to bargain over the nurse assistant RN position did not constitute an unfair labor practice because it had a "sound arguable basis" for the refusal. *See State System of Higher Education v. APSCUF,* 20 PPER ¶ 20125

---

**1.** Under Article III, Section 3 of the CBA, the fifth and final step of the grievance procedure is a final and binding arbitration award.

(Final Order, 1989) (holding that a union does not commit an unfair labor practice by refusing to bargain if the union has a sound arguable basis for believing that its action is in conformity with a collective bargaining agreement). Concluding that the Association failed to present evidence to establish that the duties of the certified school nurse and the nurse assistant RN positions were substantially similar, the hearing examiner ordered the Association to submit to the School District a written offer to bargain over the wages, hours and terms and conditions of the nurse assistant RN position. The Board dismissed the Association's exceptions and made the hearing examiner's Proposed Decision and Order absolute and final. The Association did not appeal.

In a separate Proposed Decision and Order issued in Case No. 61 the same day, the hearing examiner found that the School District committed unfair labor practices by refusing to arbitrate the Association's grievance. The hearing examiner ordered the School District to submit an offer to the Association to arbitrate the grievance. The Board dismissed the School District's exceptions, rejecting the argument that there could not be both a duty to bargain and a duty to arbitrate the grievance. The School District did not appeal from this final order.

Thereafter, the School District and the Association selected an arbitrator by mutual consent. After a hearing on October 5, 2004, the arbitrator concluded that the interpretation and application of the CBA was central to the outcome of the case and that arbitration was the proper forum for resolving the dispute. He found that the School District had assigned three certified nurses to support the newly hired nurse assistant RNs since the 1999–2000 school year, that the major difference between the certified nurses and the nurse assistant RNs was that the former held bachelor degrees and teaching certificates issued by the Pennsylvania Department of Education and that the nurse assistant RNs' work was substantially the same as that of the certified nurses. The arbitrator concluded that, as members of the bargaining unit and as professional employees, the nurse assistant RNs were entitled to all rights and benefits provided to other professional employees, and he sustained the grievance and extended salary and fringe benefits under the CBA to the nurse assistant RNs based on their credited service and educational credits. The arbitrator denied interest on the award, and he retained jurisdiction to allow the parties to work out the remedy amount.

On appeal, the trial court vacated the arbitration award and overruled the grievance because, in its view, the arbitrator's jurisdiction rested upon a finding of substantial similarity of the nurse assistant RN and school nurse positions; the identical factual issue of substantial similarity of the two positions could be inferred from the Board's decision in Case No. 41 where the Association had a full and fair opportunity to litigate the issue; the parties were bound by that finding under the doctrine of collateral estoppel; and the finding of substantial similarity was inconsistent with the Board's decision in Case No. 41. The trial court held that the arbitrator's finding of his jurisdiction was erroneous as a matter of law.[2]

**2.** The trial court also concluded that a lack of the arbitrator's subject matter jurisdiction would be a basis for granting judgment notwithstanding the verdict under Section 7302(d)(2) of the Uniform Arbitration Act, 42 Pa.C.S. § 7302(d)(2), which provides that "a court in reviewing an arbitration award ... shall ... modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would

## II

The Association argues that the trial court erred because the arbitrator had the authority to decide the issue of the applicability of the CBA to the employees who were newly added to the bargaining unit and because the trial court failed to follow the very limited scope of reviewing the arbitrator's award. Section 903 of the PERA, 43 P.S. § 1101.903, provides that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory" and that the final step of the arbitration process must "provide for a binding decision by an arbitrator...."

■ In *State System of Higher Education, (Cheyney University) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 149–150, 743 A.2d 405, 413 (1999), the Pennsylvania Supreme Court set forth the essence test standard for trial courts to follow in reviewing challenges to an arbitrator's award under the PERA:

> [T]here is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a collective bargaining agreement. That being the case, courts must accord great deference to the award of the arbitrator chosen by the parties.... The arbitrator's award must draw its essence from the collective bargaining agreement.... First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court

have entered a different judgment or a judg-

will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*See Office of Attorney General v. Council 13, American Fed'n of State, County & Mun. Employees*, 577 Pa. 257, 844 A.2d 1217 (2004) (holding that strict adherence to the essence test is mandated by strong historical preference for swift and efficient means of settling disputes under a collective bargaining agreement by grievance procedures culminating in binding arbitration). *See also Somerset Area School District v. Somerset Area Educ. Ass'n*, 899 A.2d 1170 (Pa.Cmwlth.), *appeal denied*, 589 Pa. 735, 909 A.2d 307 (2006) (reiterating limited nature of essence test review). Moreover, limited judicial review under the essence test applies not only to an arbitration award but to the determination by an arbitrator of his or her jurisdiction as well. *Juniata–Mifflin Counties Area Vocational–Technical School v. Corbin*, 547 Pa. 495, 691 A.2d 924 (1997).

In *State System of Higher Education v. Ass'n of Pennsylvania State Coll. & Univ. Faculties (SSHE I)*, 800 A.2d 983 (Pa. Cmwlth.2002), the Court considered the issue of whether the existing collective bargaining agreement applied to the non-faculty athletic trainers who were newly added to the bargaining unit. The Court adopted the holding in *Howell Educ. Secretaries Ass'n v. Howell Public Schools*, 130 Mich.App. 546, 343 N.W.2d 616 (1983), and held in *SSHE I* that if the non-faculty trainers' duties were "substantially similar" to the duties of faculty trainers covered by the collective bargaining agreement, then the terms of the agreement would apply to non-faculty trainers and if not a new contract must be negotiated.

ment notwithstanding the verdict."

Subsequently, in *State System of Higher Education v. Pennsylvania Labor Relations Board,* 821 A.2d 156 (Pa.Cmwlth. 2003), the Court reaffirmed the *SSHE I* holding and rejected the argument that employment terms for positions newly accreted into a bargaining unit must be negotiated in all circumstances.

■ The trial court misapplied the doctrine of collateral estoppel when it concluded that the arbitrator lacked jurisdiction over the Association's grievance due to the Board's previous determination regarding the substantial similarity of the two positions in Case No. 41. Collateral estoppel precludes the re-litigation of an issue determined in a previous action under the following circumstances:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Kiesewetter,* 585 Pa. 477, 484, 889 A.2d 47, 50–51 (2005).

■ Under Section 1301 of the PERA, 43 P.S. § 1101.1301, the Board has exclusive jurisdiction to hear unfair labor practice charges. Case No. 41 concerned whether the Association committed an un-fair labor practice by refusing to bargain over the employment terms and conditions of the nursing assistant RNs. The resolution of that issue in turn was dependent upon a determination of whether the Association had a sound arguable basis for refusing to bargain. Case No. 61 concerned the School District's refusal to participate in arbitration after its denial of CBA rights and benefits to the employees. Clearly, the issues were separate.

■ It is well settled that the arbitrator has the sole jurisdiction to decide the arbitrability of an issue in the first instance. *See Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982); *Chester Upland School District v. McLaughlin,* 655 A.2d 621 (Pa.Cmwlth.1995), *aff'd,* 544 Pa. 199, 675 A.2d 1211 (1996). *See also Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 75 Pa.Cmwlth. 199, 461 A.2d 649 (1983) (refusing to hold the Board powerless to investigate unfair labor practice charge because of availability of grievance arbitration under collective bargaining agreement). The mere existence of "a factual determination relevant to both the arbitration and the unfair practice proceedings, does not render the unfair practice proceedings a review of the arbitrator's decision." *Id.* at 650. Consequently, collateral estoppel does not apply, and the trial court therefore erred in concluding that the decision in Case No. 41 divested the arbitrator of jurisdiction.[3]

■ When an arbitrator interprets a collective bargaining agreement, the arbitrator decides a factual question of the

---

**3.** The trial court also suggested that the arbitrator's decision was barred by technical res judicata. An application of technical res judicata requires identity of (1) the things sued upon or for; (2) the causes of action; (3) the persons or parties to the action; and (4) the quality or capacity of the parties suing or being sued. *J.S. v. Bethlehem Area School District,* 794 A.2d 936 (Pa.Cmwlth.2002). Because the unfair labor practice proceeding before the Board and the arbitration proceeding involved separate causes of action, technical res judicata does not apply.

parties' intent. *Williamsport Area School District v. Williamsport Educ. Ass'n,* 686 A.2d 885 (Pa.Cmwlth.1996). In finding that the nurse assistant RNs' work was substantially the same as that of the certified nurses, with the exception of a few hours of classroom instruction on Growth and Development, the arbitrator stated:

> The connotation, assistant nurse, in this matter seems to be a misnomer. The record establishes the fact that said nurses in question are not assisting in the true sense of the word but are functioning and performing their duties on a one per one basis in all six schools in an independent fashion.
>
> . . . .
>
> Under direct examination the certified nurses made it explicitly clear that they had no supervisory responsibilities in regard to the assistant nurses, that when they met once a month it was a mutual relationship without any specific director or direction.
>
> By virtue of the fact that said nurse assistant, registered nurses are members of the Bargaining Unit representing professional employees of the District negates the District['']s contention that said employees are para professionals and not entitled to all rights and benefits provided other professional employees of the District. One of the three assistant nurses, registered nurses possesses a BS degree in nursing and is presently being denied her professional status that the District says is a prerequisite for professional placement.

Certified Record, Arbitrator's Decision, pp. 10–11. The arbitrator's findings that the duties of the two positions are substantially similar and that the nurse assistant RNs are covered by the CBA were based on his interpretation and the evidence.[4]

The School District argues that the nurse assistant RNs are neither professional employees under Section 1101(1) of the Public School Code of 1949 (Public School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1101(1), nor "school nurses" under Section 1401(8), added by Section 2 of the Act of July 15, 1957, P.L. 937, 24 P.S. § 14–1401(8);[5] that

4. The dissent cites *Town of McCandless v. McCandless Police Officers Ass'n,* 587 Pa. 525, 901 A.2d 991 (2006), to support its position that a plenary standard of review should apply to this case because "the arbitrator's jurisdiction over the grievance did not require fact-finding, nor an interpretation of the CBA," op. at 377, and that under this plenary standard of review the arbitrator's decision is not entitled to deference. The *McCandless* Court only reaffirmed the plenary standard of review of grievance arbitration appeals under the Act of June 24, 1968, P.L. 237 (Act 111), 43 P.S. §§ 217.1–217.10, which applies to police and fire personnel. The Supreme Court did not extend the plenary standard of review to grievance arbitration appeals under the PERA, and the dissent fails to cite any authority whatsoever for doing so in the present case. Moreover, under *McCandless* the plenary review standard governs the preliminary determination of the arbitrator's jurisdiction "unless ... that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA." *Id.,* 587 Pa. at 540, 901 A.2d at 1000.

In applying the doctrine of collateral estoppel, the dissent considers only the Board's decision in Case No. 41 and ignores the Board's decision in Case No. 61, which recognized that "the same conduct may constitute both a claim of violation of a contract and a statutory duty to bargain." R.R. at 433a. The Board clearly explained that "[i]n directing arbitration of the Union's grievance, *the Board does not address the merits of the District's claim of arbitrability.*" *Id.* at 431a (emphasis added).

5. Section 1101(1) of the Public School Code provides that "[t]he term 'professional employe' shall include those who are certificated as teachers, supervisors, ... dental hygienists, visiting teachers, ... school counselors, child nutrition program specialists, school librarians, school secretaries ... and school nurses." Under Section 1401(8), a "school

while they may provide the same nursing services as the certified school nurses, they may not perform classroom teaching under the Certification and Staffing Policy Guidelines of the Department of Education; and that granting them the same rights, benefits and protections available to professional employees directly conflicts with the Public School Code. It relies upon Section 703 of the PERA, 43 P.S. § 1101.703, which provides that parties to a CBA shall not effect or implement any provision in a CBA if doing so would violate or be inconsistent or in conflict with any statute. The parties agreed "to abide by applicable laws including the Public School Code of 1949, as amended." Article IV, Section 1 of the CBA; R.R. at 213a.

In *School District of Township of Millcreek v. Millcreek Educ. Ass'n,* 64 Pa. Cmwlth. 389, 440 A.2d 673 (1982), the Court held that the purpose of a unit clarification procedure under the PERA is to determine whether specific job classifications are properly included in the bargaining unit based upon actual job functions and that Public School Code provisions are not dispositive of employee status under the PERA. The Court concluded that the distinction in the Public School Code between permanent and substitute teachers is merely one factor to be considered in ascertaining whether the two groups share a community of interest.

The School District agreed to include the nurse assistant RNs in the bargaining unit, and it concedes that they are "profes-sional employees" under the PERA.[6] The School District fails to elaborate on how or why it believes the award violates the protections provided by the Public School Code. *Cf. Mifflinburg Area Educ. Ass'n v. Mifflinburg Area School District,* 555 Pa. 326, 724 A.2d 339 (1999) (holding that award *denying* credit for past service violated Section 1142 of the Public School Code, 24 P.S. § 11–1142, setting forth minimum teacher salaries and increments, and did not derive its essence from the agreement); *Greater Johnstown School District v. Greater Johnstown Educ. Ass'n,* 804 A.2d 680 (Pa.Cmwlth.2002) (holding the agreement that substitutes had *no right or claim* in seniority calculation, salary schedule placement or accumulation of sick leave invalid).

The trial court's scope of review of the arbitration award was limited by the essence test as enunciated in *Cheyney University.* That review was limited to determining whether the issue before the arbitrator, as properly defined, was within the terms of the CBA, and if so the award will be upheld if the arbitrator's interpretation can be rationally derived from the CBA. The trial court could vacate the award only if it "indisputably and genuinely" lacked foundation in or failed to logically flow from the CBA. The arbitrator's conclusions here that the grievance was arbitrable and that the nurse assistant RNs are covered by the CBA were rationally derived from the terms of the CBA. As such, the trial court exceeded its limit-

nurse" means "a licensed registered nurse properly certificated by the Superintendent of Public Instruction as a school nurse who is employed by a school district...."

**6.** Section 301(7) of the PERA, 43 P.S. § 1101.301(7), defines a "professional employe" as "any employe whose work: (i) is predominantly intellectual and varied in char-acter; (ii) requires consistent exercise of discretion and judgment; (iii) requires knowledge of an advanced nature in the field of science or learning customarily acquired by specialized study in an institution of higher learning or its equivalent; and (iv) is of such character that the output or result accomplished cannot be standardized in relation to a given period of time."

ed scope of review in vacating the award, and the Court must reverse its order.

Judges COHN JUBELIRER and LEAVITT dissent.

### ORDER

AND NOW, this 20th day of February, 2007, the Court reverses the order of the Court of Common Pleas of Indiana County and reinstates the award of the arbitrator.

### DISSENTING OPINION BY Judge LEADBETTER.

I respectfully dissent from the majority's decision to reverse the order of the court of common pleas and reinstate the arbitrator's award because, in my view, common pleas correctly concluded that the arbitrator was collaterally estopped as a matter of law from finding that the position of school nurse assistant (nurse assistant) was substantially similar to that of the other school nurse position currently covered under the existing CBA. Application of the proper scope and standard of review requires correction of the arbitrator's award, whether framing the issue as the majority does, that is, whether the arbitrator had authority to decide the applicability of the CBA to the nurse assistants, or, as I would, to wit, whether the arbitrator's failure to employ the doctrine of collateral estoppel to the issue of substantial similarity of the positions, mandates correction of the award as a matter of law.

As the majority correctly notes, in both State System of Higher Education v. Association of Pennsylvania State College & University Faculties, 800 A.2d 983 (Pa. Cmwlth.2002) (SSHE I) and State System of Higher Education v. Pennsylvania La-

bor Relations Board, 821 A.2d 156 (Pa. Cmwlth.2003) (SSHE II), this court held that if positions newly added to a bargaining unit are substantially similar to positions already covered by the existing CBA, the arbitrator has jurisdiction to determine a grievance filed on behalf of employees in the newly accreted position. Conversely, if there is not a similarity of duties between the newly accreted position and the position originally covered by the CBA, the arbitrator lacks authority to resolve the grievance as the new position is not covered by the terms of the CBA. Typically, as in SSHE I, determination of substantial similarity will involve an interpretation of the CBA as well as fact-finding as to the nature and duties of the positions subject to comparison.[2]

Here, however, the Board's finding in Case No. 41, that the two nurse positions did not involve substantially similar duties, precluded or estopped the arbitrator as a matter of law from re-examining that issue. In Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.), 88 Pa.Cmwlth.76, 488 A.2d 1177 (1985), this court examined the doctrine of collateral estoppel, stating in pertinent part:

[W]here particular questions of fact essential to the judgment are actually litigated and determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action.

Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were

---

**2.** Interestingly, in SSHE I, in concluding that the positions involved substantially similar duties, the arbitrator relied on findings made

by the Board. See SSHE I, 800 A.2d at 987–88.

actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were "material" to the adjudication.

*Id.* at 1179 [quoting *Township of McCandless v. McCarthy,* 7 Pa.Cmwlth. 611, 300 A.2d 815, 820–21 (1973)]. Moreover, contrary to the Association's position, as the above law makes clear, an "identity of things sued for" is not necessary for collateral estoppel to apply.

In Case No. 41, the Board was charged with determining whether the Association committed an unfair labor practice by failing to bargain in good faith over the terms and conditions of the nurse assistants' employment. In defense, the Association argued that it had a sound arguable basis for failing to bargain because the position of nurse assistant involved duties similar to those required by the nurse position named in the CBA. *See* Hearing Examiner's Proposed Decision and Order (Case No. 41, dated March 1, 2004) at Reproduced Record (R.R.) 413a. As both *SSHE I* and *II* demonstrate, determination of both the applicability of the CBA to a previously unnamed position and the validity of the sound arguable basis defense necessarily require a finding as to whether the position newly added to the bargaining unit is substantially similar to the position named in the CBA. Indeed, a finding regarding substantial similarity was *essential* to the Board's resolution of the unfair labor practice charge, as evidenced by the Board's discussion:

> [T]he record is devoid of evidence demonstrating that the job duties of the assistant nurses are substantially similar to those of the certified nurses. In this regard, the Union merely directs the Board's attention to the fact that there is one certified nurse at each of three schools and there is an assistant nurse at each of three schools. The Union

accordingly maintains that this one fact is dispositive that assistant nurses perform similar job functions as the certified nurses. However, this one, inconclusive fact pales in comparison to the extensive record before the Board in *SSHE II,* which detailed the interchangeability and fungibility of faculty and non-faculty trainers and the extensive similarities between their daily job duties. The courts have consistently approved the Board's long-standing policy requiring the examination of evidence of actual job duties when unit positions are at issue. . . .

> The Union failed to present any such evidence in this case to satisfy the requisite standard articulated by the Commonwealth Court in *SSHE I* and *SSHE II.* . . . Accordingly, absent record evidence establishing the actual job duties of the assistant nurses are "substantially similar" to those of the certified nurses, as required by [*SSHE II*], the Board is unable to conclude that the parties contemplated the applicability of the CBA to the assistant nurses such that the Union possessed a sound arguable basis for refusing to bargain with the District the wages, hours, and other terms and conditions of employment for the assistant nurses, especially where the CBA was executed before and not after the assistant nurses were accreted into the unit, as in *SSHE I* and *SSHE II.*

Board's Final Order (Case No. 41, dated May 18, 2004) at R.R. 419–20a. Accordingly, since the issue of whether the two nursing positions required substantially similar duties was involved in both proceedings, was litigated before the Board, and was essential and material to the Board's order, the Board's determination of a lack of substantial similarity was conclusive in the subsequent arbitration and, therefore, could not be re-examined.

Moreover, the fact that the Association failed to present before the Board the evidence of substantial similarity that it adduced before the arbitrator does not preclude the Board's judgment from acting as an estoppel in the arbitrator's action, at least with respect to the significant question of whether the school nurse assistant positions were substantially similar to the school nurse positions. *See, e.g., Patel* (the fact that testimony presented by a claimant was not as thoroughly developed in a prior proceeding as he would have liked does not entitle him to a new hearing on the issue, which was already litigated and essential to the prior judgment).[3]

In this case, I believe the majority misapplies the essence test[4] in giving deference to the award. While the arbitrator has sole jurisdiction to initially to decide the arbitrability of an issue,[5] arbitrability does not always turn on an interpretation of the CBA, and in those cases, like the present one, the deference required under the essence test is simply not applicable. Rather, I believe our review of the arbitrator's error is plenary, both under recent appellate authority, namely *Town of McCandless v. McCandless Police Officers Association,* 587 Pa. 525, 901 A.2d 991 (2006) and Section 7302(d)(2) of the Uniform Arbitration Act, 42 Pa.C.S. § 7302(d)(2).

In *McCandless,* our Supreme Court reviewed the scope and standard of review applicable to an Act 111[6] arbitration award. While the court noted that its appellate scope of review was limited to narrow certiorari,[7] it reaffirmed that the

---

**3.** The Association cites *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 75 Pa.Cmwlth. 199, 461 A.2d 649 (1983), for the proposition that grievance proceedings are entirely separate matters from Board proceedings and, therefore, a determination in one should not control the outcome in another. Although superficially similar, the issue decided in that case was the Board's exclusive jurisdiction over unfair labor practice claims; collateral estoppel was not addressed. As we noted in *City of Reading v. Pennsylvania Labor Relations Board,* 130 Pa. Cmwlth. 397, 568 A.2d 715, 721 n. 4 (1989): "While the inconsistent remedies in both *Philadelphia Housing* and the instant case could arguably have been avoided by the raising of a successful collateral estoppel defense, this defense was not raised in either case."

**4.** Our Supreme Court described the essence test in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999), stating as follows:
The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if

the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.
*Id.* at 150, 743 A.2d at 413 (footnotes omitted).

**5.** *See Township of Sugarloaf v. Bowling,* 563 Pa. 237, 759 A.2d 913 (2000); *Pennsylvania Labor Rel. Bd. v. Bald Eagle Area Sch. Distr.,* 499 Pa. 62, 451 A.2d 671 (1982); *Chester Upland Sch. Distr. v. McLaughlin,* 655 A.2d 621 (Pa.Cmwlth.1995), *aff'd without op.,* 544 Pa. 199, 675 A.2d 1211 (1996).

**6.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

**7.** Narrow certiorari limits the court's inquiry into only four areas: "(1) jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) deprivation of constitutional rights." *Rebert v. York County Detectives Ass'n,* 909 A.2d 906, 910 (Pa.Cmwlth.2006).

standard by which we review issues such as arbitral jurisdiction depends on whether the resolution is purely a question of law or requires fact-finding or interpretation of the CBA. Specifically, the court opined:

Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari, thus allowing for non-deferential review-unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA. In other words, in the absence of the noted caveat, there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed, whether the proceedings were regular, whether there was excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.

*Id.* at 540–41, 901 A.2d at 1000 [*citing Pa. State Police v. Pa. State Troopers Ass'n,* 840 A.2d 1059, 1062–63 (Pa.Cmwlth.2004)]. I have not found any appellate authority which would support the conclusion that this standard is not equally applicable to awards under Act 195,[8] which generally mandates a less deferential review than under Act 111.

Accordingly, I would employ a plenary standard in the present case, as the arbitrator's jurisdiction over the grievance did not require fact-finding, nor an interpretation of the CBA. Rather, the arbitrator's jurisdiction turned on a simple question of law, that is, whether the arbitrator was bound by the Board's finding that the two nursing positions were not substantially similar. I believe that the Board's finding regarding lack of substantial similarity commanded the conclusion that the current CBA did not apply to the nurse assistants, depriving the arbitrator of jurisdiction over the grievance. Accordingly, the arbitrator erred as a matter of law in addressing the issue in the first instance and finding that substantial similarity in job duties required application of the CBA to the nurse assistants. Application of plenary review requires that this court correct the arbitrator's award, rather than give deference to it.[9]

This same result occurs when the award is examined under the confines of 42 Pa. C.S. § 7302(d)(2), which has also been described as embodying the essence test.[10] Section 7302(d)(2), applicable to arbitration awards under Act 195,[11] provides as follows:

Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a

---

**8.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101–2301.

**9.** It could also be said that because the arbitrator lacked jurisdiction, the award did not derive its essence from the CBA.

**10.** *See Greater Nanticoke Area Sch. Distr. v. Greater Nanticoke Area Educ. Ass'n,* 760 A.2d 1214 (Pa.Cmwlth.2000).

**11.** Section 7302(d)(1)(ii) provides that subsection (d)(2) applies when "[a] political subdivi-

sion submits a controversy with an employee or a representative of employees to arbitration." 42 Pa.C.S. § 7302(d)(1)(ii). *See also Cheyney University,* 560 Pa. 135, 743 A.2d 405 (1999); *Pennsylvania State Educ. Ass'n v. Appalachia Intermed. Unit 08,* 505 Pa. 1, 476 A.2d 360 (1984); *Community Coll. of Beaver County v. Community Coll. of Beaver County, Soc. of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977).

different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. 7302(d).[12] Clearly, the arbitrator's error in failing to give proper effect to the Board's decision renders an award contrary to law and is of the type that judgment notwithstanding the verdict would be necessary had it been the product of a jury.

Accordingly, I would affirm the decision of the court of common pleas.

Judges COHN JUBELIRER and LEAVITT join this dissenting opinion.

---

**12.** *See, e.g., Greater Johnstown Sch. Distr. v. Greater Johnstown Educ. Ass'n,* 167 Pa. Cmwlth. 50, 647 A.2d 611 (1994) (correction of award under Section 7302(d) proper where award is inconsistent with School Code and Department of Education regulations).